212 So.2d 632 (1968)
STATE of Florida, Petitioner,
v.
Edward Franklin COFFEY, Jr., Respondent.
No. 37082.
Supreme Court of Florida.
July 2, 1968.
*633 Earl Faircloth, Atty. Gen., and Wallace E. Allbritton, Asst. Atty. Gen., for petitioner.
Mahon & Mahon, Jacksonville, for respondent.
ROBERTS, Justice.
This cause is before the court for review, on direct conflict certiorari, of the decision of the District Court of Appeal, First District, in Coffey v. State, Fla.App. 1968, 205 So.2d 559.
An automobile being operated by the respondent collided with a motorcycle, resulting in the death of the cyclist. The respondent was tried and convicted on both counts of an information charging him with manslaughter in two counts: one for operating his vehicle while intoxicated and the other for culpable negligence in operating his vehicle. During the course of the trial the State introduced into evidence the results of a blood alcohol test given to respondent following the accident. It was shown that the test was given to him with his full and free consent, after he had been told of the death of the cyclist and that he was or would be charged with the offense of manslaughter, and after being advised that he did not have to take the test but that, if he did, the results thereof could be used against him in the criminal trial. Holding that the blood test results were inadmissible, the judgment of conviction was reversed by the appellate court under the authority of Cooper v. State, Fla.App. 1966, 183 So.2d 269, and Nash Miami Motors, Inc. v. Ellsworth, Fla.App. 1961, 129 So.2d 704, writ disch. Fla., 142 So.2d 733.
We agree with the petitioner that, in so doing, the appellate court misconstrued the effect of the cited cases insofar as the controlling point of law is concerned. Accordingly, we have direct conflict jurisdiction of the cause. See Pinkerton-Hays Lumber Co. v. Pope, Fla. 1961, 127 So.2d 441; McBurnette v. Playground Equipment Corp., Fla. 1962, 137 So.2d 563.
As a background, some discussion is required of the impact of Sections 317.121-317.171, Fla. Stat., F.S.A., relating to accident reports, upon subsequent civil or criminal proceedings arising out of the accident. Under Sec. 317.131(1), the driver of a vehicle involved in an accident resulting in bodily injury to or death of any person or damage to property of $50.00 or more is required to forward a written report of such accident to the Department of Public Safety within five days. His failure to do so subjects him to a criminal penalty. Sec. 317.701, Fla. Stat., F.S.A. The officer who investigates the accident is also required to forward a written report of the accident to the department within 24 hours after completing his investigation. Sec. 317.131(3), Fla. Stat., F.S.A. The provisions of the statute with which we are particularly *634 concerned here are found in Sec. 317.171, Fla. Stat., F.S.A., as follows: 
"All accident reports made by persons involved in accidents shall be without prejudice to the individual so reporting and shall be for the confidential use of the department or other state agencies having use of the records for accident prevention purposes, * * *. No such report shall be used as evidence in any trial, civil or criminal, arising out of an accident, * * *." (Emphasis added.)
It is well settled that the statements made by the driver of a vehicle (or the owner or an occupant if the driver is incapacitated, Sec. 317.141, Fla. Stat., F.S.A.) to the investigating officer following an accident, relating his version of the accident and forming the basis for the investigating officer's report to the Department of Public Safety, are sufficient to discharge the driver's statutory duty insofar as the written report required by Sec. 317.131(1), supra, is concerned. See Stevens v. Duke, Fla. 1949, 42 So.2d 361; Herbert v. Garner, Fla. 1955, 78 So.2d 727. And it is only such statements  that is, those that the driver of the vehicle (or owner or occupant) is compelled to make in order to comply with his statutory duty  that are clothed with statutory immunity under Sec. 317.171, supra. See Stevens v. Duke, supra, in which this court, in distinguishing an Illinois case, Ritter v. Nieman, 329 Ill. App. 163, 67 N.E.2d 417, pointed out that
"* * * it was not shown that the statements made by the participant in the accident which later were testified to by the investigating officer were made to him for the purpose of forming a basis for the official report required to be filed by the participant. (Emphasis added.)
To the same effect is the statement of the District Court of Appeal, Second District, in Lobree v. Caporossi, Fla.App. 1962, 139 So.2d 510 that:
"It is not the written report or testimony of the officer which is privileged as such; the privilege attaches to that part of the officer's written report or testimony which was obtained by him from a person who was required to make a report." (Emphasis added.)
There is nothing in Cooper v. State, supra, 183 So.2d 269, relied upon by the appellate court in the instant case, which requires a different conclusion. In that case the same appellate court which rendered the decision sub judice was concerned with the admissibility of the results of a blood alcohol test that was taken by the investigating officer for the declared purpose of continuing his investigation of the accident and completing his accident report, under conditions casting some doubt upon the mental capacity of the defendant to understand that she was not required to take the blood test. The appellate court rightly held that, in these circumstances, the trial court erred in allowing evidence of the blood test to go to the jury.
The circumstances shown by the record in the instant case are entirely different, as noted above. There was no doubt that the respondent knew that the accident-report phase of the investigation had ended and that the blood test was being given to him in connection with the charge of manslaughter with which he was faced. The respondent testified that he voluntarily consented to take the test  apparently because he hoped it would not indicate an undue amount of intoxication. The circumstances of the instant case were more than ample to satisfy the general rule as to the admissibility of this type of evidence, approved in Touchton v. State, 1944, 154 Fla. 547, 18 So.2d 752, as against the contention that the defendant's right to be protected against self-incrimination granted by Section 12 of the Declaration of Rights, Florida Constitution, F.S.A., had been violated. This rule was stated in the Touchton case, supra, quoting 22 C.J.S., Criminal Law, § 651, as follows: 
"`Evidence resulting from a medical examination of accused for the purposes of *635 the prosecution rather than for treatment, after an accusation has been made against him, is admissible where, in the absence of any compulsion, accused submits or consents to the examination.'"
Accord: State v. Wardlaw, Fla.App. 1958, 107 So.2d 179; Giddens v. Cannon, Fla. App. 1967, 193 So.2d 453, writ disch. May 22, 1968, Fla., 210 So.2d 714.
And we think that these circumstances are ample to take the evidence of the results of the blood test out from under the protective cloak of Sec. 317.171, supra. This particular section of the statute was designed to protect the constitutional right against self-incrimination guaranteed by Sec. 12, Decl. of Rights, Fla. Const., while, at the same time, requiring persons involved in accidents to make a true report thereof so as to enable the Department of Public Safety "to facilitate the ascertainment of the cause of accidents * * *" Wise v. Western Union Telegraph Co., Fla.App. 1965, 177 So.2d 765. Being in derogation of the common law, it should be strictly construed "in the sense that no situation should be held within its operation to which the legislature did not clearly intend to accord the privilege." Wise v. Western Union Telegraph Co., supra, 177 So.2d 765. And we do not think that the Legislature intended Sec. 317.171, supra, to have the effect of shielding a person suspected of committing a crime in the operation of a motor vehicle from any investigation whatsoever. The fact that the crime was committed in the operation of a motor vehicle is pertinent to the highway safety program of this State; but it does not entitle the person suspected of or charged with committing such a crime to any special treatment insofar as the determination of his guilt or innocence is concerned. In our opinion, he is entitled to the same constitutional safeguards as any other person suspected of or charged with a crime  no more and no less.
Thus, in a proper case, where there is probable cause to believe that a crime has been committed in the operation of a motor vehicle, the investigating officer, after completing his accident report  which may include statements made to him by the person or persons involved in the accident who are required by Sec. 317.131(1), supra, to make a written report of the accident, and which would be entitled to the protection of Sec. 317.171, supra  may then "change his hat," so to speak, discontinue his role as an agent of the Department of Public Safety and assume that of an officer charged with the duty of investigating a crime which he has probable cause to believe has been committed. And where, as in the instant case, every precaution is taken to make sure that the accused's constitutional rights are protected, the evidence resulting from such an investigation is as admissible in this type of case as in any other.
The decision of the District Court of Appeal, Third District, In Nash Miami Motors, Inc. v. Ellsworth, supra, 129 So.2d 704, was also relied upon by the appellate court in the decision sub judice. Here, again, the appellate court's reliance was unwarranted. In the Nash case, after relating his version of the accident to one officer, the driver of the motor vehicle which struck a pedestrian was taken to the police station and interrogated by a special accident investigator a second time as to his version of the accident. The purpose of this second investigation was "for discovery of possible criminal charges which might arise from the accident", to quote the decision of the appellate court, 129 So.2d p. 706. The zeal of the special investigating officer is, perhaps, commendable; however, the propriety of bringing an accident participant to the police station for a second report of the accident, absent any circumstances indicating that a crime has been committed by such person, is questionable. In any event, it appears that the stereotype "warning" given to the driver in the Nash case was insufficient to alert him to the fact that the accident-report phase of the investigation had ended, even if it could be said that some type of criminal *636 investigation had begun. Clearly, the facts of the Nash case are so different from those in the instant case as to afford no basis whatsoever for the decision sub judice.
For the reasons stated, the decision here reviewed should be and it is hereby quashed, and the cause remanded for further proceedings not inconsistent with this opinion.
It is so ordered.
CALDWEL, C.J., DREW and THORNAL, JJ., and MASON, Circuit Judge, concur.