362 So.2d 999 (1978)
Earl E. ELDER, Sr., As Administrator of the Estate of Earl E. Elder, Jr., Appellant,
v.
ROBERT J. ACKERMAN, INC., a Florida Corporation for Profit, Robert J. Ackerman, Jr., Continental Insurance Company, a Foreign Corporation, and Highlands Insurance Company, a Foreign Corporation, Appellees.
No. 76-2669.
District Court of Appeal of Florida, Fourth District.
September 27, 1978.
*1000 Phillips & Babbitt and Larry Klein, West Palm Beach, for appellant.
Kirk Sullivan and Edna L. Caruso, of Montgomery, Lytal, Reiter, Denney & Searcy, West Palm Beach, for appellee-Highlands Ins. Co.
Stephen C. McAliley, of Brennan, McAliley, Albury & Hayskar, West Palm Beach, for remaining appellees.
DOWNEY, Chief Judge.
This appeal involves the admissibility of a statement by a driver of a vehicle given to a police officer at the scene of an accident.
Appellee, Robert J. Ackerman, Jr., a 16 year old high school boy, while driving a truck at about 5:00 a.m. in Palm Beach County, collided with appellant's decedent, Earl Lee Elder, Jr., who, with a passenger, was driving a motorcycle through an intersection controlled by a traffic light. Elder and his passenger were killed and this wrongful death action resulted.
Shortly after the accident Deputy Sheriff Jon McDonough arrived on the scene and proceeded with a traffic accident investigation. Immediately thereafter Detective Walsh arrived and proceeded to assist McDonough with the investigation. McDonough interrogated Ackerman to obtain information for his accident report, required by Section 316.066, Florida Statutes (1975). Ackerman was placed in the back of a police car and interrogated further by McDonough, who testified he read Ackerman his Constitutional rights. After McDonough had obtained sufficient information for his accident report, Walsh proceeded to interrogate Ackerman further about the accident. Walsh testified that he did not advise Ackerman that there might be criminal charges involved, and as far as Ackerman knew, Walsh was one of the policemen working on the accident. Walsh testified further that Ackerman told him he was not sure what color the light was when he entered the intersection.
Walsh's testimony was elicited during a proffer by appellant. It was particularly vital because Ackerman testified at the trial that he had a green light as he entered the intersection. The trial judge rejected the proffer on the grounds that the evidence did not show that when Ackerman made the critical statement he knew the accident investigation had terminated, and the criminal investigation had commenced.[1] *1001 The trial resulted in a defense verdict and the trial judge's ruling on the proffer of Walsh's testimony is the judicial error assigned for review.
The parties don't agree on the point involved in this appeal. However, the issue as we see it is whether the proffered testimony was admissible in evidence or whether it was protected by Section 316.066, Florida Statutes (1975).
Appellant contends that McDonough was at the scene to investigate the accident and to make the Section 316.066 report but that Walsh was there to conduct the criminal investigation, if such an investigation were called for. That is not an entirely fair analysis of the proffered testimony. We agree with the trial judge that the evidence does not make it clear that Walsh's function at the scene was purely criminal investigation  in fact, his conduct there was in part assisting McDonough with the accident investigation. However, that is not decisive of the real point in the case.
Ackerman was required by law to make a report of the accident §§ 316.062; 316.066; 316.068 (1975). As a consequence of that statutory mandate he was entitled to the protection of § 316.066(4), Florida Statutes (1975), which makes such report inadmissible as evidence in any trial, civil or criminal, arising out of the accident. Stevens v. Duke, 42 So.2d 361 (Fla. 1949). That protection does not apply with regard to a voluntary statement made during the course of an investigation of the criminal aspects of an accident. The same officer may conduct both the accident investigation for the § 316.066 report and the criminal investigation or different officers may be involved. The important point is that the person being questioned must be apprised of the distinction between the accident investigation phase and the criminal investigation phase.
In Nash Miami Motors, Inc. v. Ellsworth, 129 So.2d 704 (Fla. 3rd DCA 1961), the defendant driver gave Officer McCracken a statement regarding the accident. Thereafter, and while McCracken was still conducting his investigation, Officer Fontana arrived to conduct a special investigation. He advised the driver he wanted to take his statement and drove the driver to the police station to do so. At the station Fontana advised the driver that he was being questioned regarding the subject accident; that the driver was not required to answer any questions, but that any statements made might be used against him in some future criminal proceedings. The driver gave a statement which was transcribed but was not used by McCracken in his accident report. In reversing a judgment for plaintiff because the driver's statement to Fontana was admitted in evidence, the District Court stated:
"But appellee urges that the second report given to officer Fontana was not an `accident report' within the meaning of the statute. He argues that the statement given to officer Fontana was not for the purpose of making an accident report but was for discovery of possible criminal charges which might arise from the accident. From the viewpoint of the person interrogated there is little difference. *1002 The distinction, to have meaning, would require realization by a person charged with giving such a report that one officer was reporting the accident, while a second, who asked the same questions, was not reporting the accident. It further appears that for the statement of a defendant to be privileged under this statute it is not necessary for it to be given to an investigating officer, or given at the scene of the accident, or that the statement be used in a subsequently filed report of the accident." 129 So.2d at 706.
The facts in Nash, supra, are stronger than those in the case at bar with regard to what the officer did to put Ackerman on notice of the termination of the accident investigation and commencement of the criminal investigation. As the Supreme Court in State v. Coffey, 212 So.2d 632, 635 (Fla. 1968), stated:
"... In the Nash case, after relating his version of the accident to one officer, the driver of the motor vehicle which struck a pedestrian was taken to the police station and interrogated by a special accident investigator a second time as to his version of the accident. The purpose of this second investigation was `for discovery of possible criminal charges which might arise from the accident', to quote the decision of the appellate court, 129 So.2d p. 706 ... [t]he stereotype `warning' given to the driver in the Nash case was insufficient to alert him to the fact that the accident-report phase of the investigation had ended, even if it could be said that some type of criminal investigation had begun."
In the case at bar the only possible indication of a different character of investigation was the fact that Walsh advised Ackerman of his constitutional rights; but then, so did McDonough during his interrogation for the accident report. How is a 16 year old boy at the scene of a serious auto accident and the emotional upset which usually accompanies such an experience supposed to discern the nuances of the dichotomy existing between investigations for automobile accident reports and investigations for the criminal aspects of automobile accidents? The trial judge found here that the evidence did not show that Ackerman understood that Walsh's capacity was different than McDonough's.
The solution to the problem presented in these cases is relatively simple. Law enforcement officers investigating accidents must be aware of the ramifications associated with taking statements from drivers in accident cases. When the investigation conducted to make the 316.066 report is concluded and the investigation into possible criminal aspects of the accident commences the driver should be advised of that fact. To do any less simply erodes the protection which the Legislature affords drivers in order to obtain accurate information for reports of automobile accidents.
In his reply brief appellant takes the position that an analysis of the dissenting opinion in Coffey v. State, 205 So.2d 559 (Fla. 1st DCA 1967), and the opinion of the Supreme Court in the same case on certiorari[2] demonstrate that the driver's understanding of the change from the accident report investigation to the criminal investigation is of little or no significance. We strongly disagree with able counsel for appellant; the cases simply do not support that conclusion.
The majority in the Coffey case in the District Court held the evidence inadmissible relying to some extent upon Ellsworth v. Nash Miami Motors, Inc., supra. The dissent pointed out that:
"It is only consistent with logic and reason to hold that once a person who is the subject of an accident investigation in which he is involved is told by the investigating officer that he is thenceforth being investigated in connection with a criminal charge which may be placed against him arising out of the accident, that he is entitled to the protection of all rights accorded him by the constitution including the right to remain silent, the immediate right to counsel, and that anything *1003 he may thereafter say, or the report of any tests or examination to which he may voluntarily submit, may be used against him in any criminal prosecution arising out of the accident, then under such circumstances the immunity statute loses its relevancy and should no longer be applicable to anything voluntarily said or done by the suspect in the course of the criminal investigation." 205 So.2d at 562.
Upon certiorari the Supreme Court quashed the majority holding in Coffey, but once again made it clear that the driver in Coffey knew when the accident report phase of the investigation ended and the criminal investigation commenced. In that regard the Supreme Court stated:
"There was no doubt that the respondent knew that the accident-report phase of the investigation had ended and that the blood test was being given to him in connection with the charge of manslaughter with which he was faced." 212 So.2d at 634.
Rather than discard the Nash decision, supra, the Supreme Court impliedly approved it. The court noted that the District Court of Appeal majority's reliance on Nash was unwarranted. Obviously, that was due to the difference in the facts. In Coffey the driver knew when the accident investigation ended and in Nash he did not. The following quote from the Supreme Court in Coffey indicates to us that it did not in any way disapprove the holding in Nash. The court simply said:
"In any event, it appears that the stereotype `warning' given to the driver in the Nash case was insufficient to alert him to the fact that the accident-report phase of the investigation had ended, even if it could be said that some type of criminal investigation has begun. Clearly, the facts of the Nash case are so different from those in the instant case as to afford no basis whatsoever for the decision sub judice." 212 So.2d at 635.
In view of the foregoing we conclude that the trial judge was eminently correct in sustaining the objection to the proffer of Walsh's testimony. Thus, the judgment appealed from is affirmed.
AFFIRMED.
MOORE, J., and RIVKIND, LEONARD, Associate Judge, concur.
NOTES
[1] In denying the appellant's motion for new trial, the trial court stated: "In the case before this Court and the testimony submitted to it by the investigating officers, it is unclear when, if ever, the accident report had been concluded and the criminal investigation had commenced in relation to the testimony Plaintiff unsuccessfully sought to have introduced in the trial. Jon Edward McDonough was the officer investigating the accident and was present when the first conversations took place with the driver of the vehicle. Officer McDonough testified he advised the driver of the vehicle of his Miranda Warnings and began to interview the driver to ascertain what had happened with regard to the traffic accent [sic]; that the accident involved a death and the investigation would continue, however, the officer was not sure if criminal charges would be filed or not. Officer McDonough went about his official duties leaving the driver and Officer Walsh together.

"Officer Walsh talked further with the driver and other persons. Upon returning to the driver and continuing his inquiry, it was then the driver indicated to Officer Walsh he was not sure what color the traffic light was.
"It is this statement counsel for Plaintiff desired to admit into evidence to which the defense objected and the Court sustained the objection.
"Officer Walsh testified he was assisting Officer McDonough and he could not recall exactly what he had told the driver in relation to when the accident investigation terminated and criminal investigation commenced.
"For such testimony to become admissible into evidence during a trial and escape the legislative immunity accorded to it by statute, the burden is upon the proponent of the evidence to show the person involved in the accident who has made a report required of him by statute is made aware and sufficient alerted that the inquiry relating to the accident report statute has come to an end and the inquiry now being made is for purposes other than those required by the statute. Such burden has not been met in the case under consideration."
[2] State v. Coffey, 212 So.2d 632 (Fla. 1968).