HENDRY, Judge.
This is an appeal by appellant/plaintiff from an adverse final judgment entered pursuant to a jury verdict in an action for personal injuries arising out of an accident between a motorcycle and an automobile.
The sole point presented for our determination is whether the trial court committed reversible error in admitting into evidence a written and signed statement made by the *910 minor operator of the automobile to officers at the scene of the accident to the effect that the minor did not have the permission of the owner or primary user of the automobile to drive it at the time of the accident. If the minor was a permissive user of the automobile, then insurance coverage would be provided.
The facts of the case are as follows: appellant sued appellee Mario Pappas, individually and as the father of Helen Pappas, and appellee Frederick Boehm alleging that Helen so negligently operated an automobile owned by Frederick Boehm that it collided with a motorcycle owned and operated by appellant. It appears from the evidence that Helen obtained possession of the Boehm automobile while it was in the possession of Mr. Boehm’s minor daughter, Lauri, and being used by Lauri with his permission.
On the day of the accident, Lauri had driven Helen and two other young girl friends to the beach. Upon leaving the beach, the girls returned to Helen’s home and took showers. While Lauri was taking her shower, Helen took the ignition keys that Lauri had left either in the bathroom or on the bed, and drove away in Lauri’s automobile. She had driven only a short distance from her home when she collided with appellant, causing him serious injuries.
Prior to trial, the parties entered into a written stipulation that the sole issue to be tried was whether or not Helen Pappas had Lauri Boehm’s express or implied permission to use the automobile involved in the accident. The testimony adduced at trial differed substantially as to whether Lauri had given Helen permission to use the automobile.
Lauri testified that when she came out of the shower she did not realize that her keys were gone. Soon thereafter the Pappas’ phone rang and Helen’s sister Terry answered it. She began screaming that Helen had hit somebody with somebody’s car. Lauri said, she looked out the door and for the first time realized that her car was missing. Lauri further testified that she never gave Helen permission to use the Boehm automobile. Lauri and Helen’s mother drove to Greynolds Park where the accident occurred. When Lauri saw the damage to the Boehm automobile she screamed at Helen who was talking to police officers, saying, “Why did you take my car? My father is going to kill me and you had no permission.”
Helen’s testimony was substantially different. She stated that she emerged from her shower and asked Lauri if she could use the car to “cruise” around the block. Helen replied, “Sure, just don’t get me in trouble.” Helen denied that Lauri said anything to her at the scene of the accident. Further, Andrea Shapiro, one of the girls accompanying Helen and Lauri to the beach and back to Helen’s home, testified that she was present when Lauri gave Helen her permission to use the car.
At the time of the accident, Sgt. Terry Palmer and seven other police officers were on special assignment at Greynolds Park. Shortly after the accident occurred, the officers were at the scene. Sgt. Palmer and one of his men apprehended Helen in the woods nearby and took her back to the scene of the accident, turning her over to the investigating officer, Anthony Cos. Officer Cos was dispatched to investigate the accident and at trial, testified that it was his responsibility to prepare the traffic report. He began his investigation by questioning Helen. At that time, he made no notation on the accident report of what Helen said.
Shortly after Cos arrived, Officer Robert Hinman, a traffic homicide investigator was sent because of the possibility that a death may have occurred. Officer Hinman testified that once he appeared at the accident site, he was in charge of the overall investigation and directed Officer Cos to assist him in the investigation.
Once Officer Hinman arrived, Officer Cos took Helen to him for questioning. Officer Cos remained in the presence of both Officer Hinman and Helen during the initial questioning. Cos testified that he heard Officer Hinman read Helen her “Miranda Rights” and he saw Officer Hinman take a *911 written statement from Helen. Prior to the completion of the statement, Officer Cos returned to his vehicle to complete the accident report.
Officer Hinman did not advise Helen that he was investigating for a possible homicide or that his report would not be made a part of the traffic report to be filed in Tallahassee. He did not advise her that his report was any different than any other police officer’s report prepared during the investigation of an accident. Hinman did state, however, that his report was related to the traffic accident report. Both reports contained the statement made by Helen to the effect that she took the vehicle without the permission of the owner.
At trial, the court admitted into evidence, over appellant’s objection, Helen’s statement. In response to the statement’s introduction, Helen testified that she only wrote and signed the statement to protect her friend Lauri as she was fearful that Lauri would get into trouble with her father. At the conclusion of all testimony, however, the jury found that Helen did not have permission to use the automobile. Accordingly, a verdict and judgment were entered in favor of appellees and this appeal follows.
Appellant contends that it was reversible error for the trial court to admit into evidence the written statement of Helen Pap-pas in that she was never informed that the statement was not being taken as part of the traffic accident investigator’s report, which is protected by Section 316.066(4), Florida Statutes (1977). Said statute provides that all accident reports made by persons involved in accidents shall be without prejudice to the individual so reporting and no such report shall be used as evidence in any trial, whether civil or criminal, arising out of an accident.
Appellees take the position that, inasmuch as Helen’s statement was given to Officer Hinman in connection with his investigation of a possible homicide and not for a Section 316.066(4) traffic report, the statement was afforded no protection under the statute and was properly admitted into evidence. Appellees rely heavily upon State v. Mitchell, 245 So.2d 618 (Fla.1971); Standley v. White, 326 So.2d 68 (Fla. 1st DCA 1976); State v. Fernandez, 303 So.2d 58 (Fla. 4th DCA 1974). We think these cases are distinguishable from the instant case and are not controlling.
We do think, however, the controlling cases are Nash Miami Motors, Inc. v. Ellsworth, 129 So.2d 704 (Fla. 3d DCA 1961), cert. discharged 142 So.2d 733 (Fla.1962); and Elder v. Robert J. Ackerman, Inc., 362 So.2d 999 (Fla. 4th DCA 1978). In the Nash Miami Motors decision, this court opined as follows:
“But appellee urges that the second report given to officer Fontana was not an ‘accident report’ within the meaning of the statute. He argues that the statement given to officer Fontana was not for the purpose of making an accident report but for discovery of possible criminal charges which might arise from the accident. From the viewpoint of the person interrogated there is little difference. The distinction, to have meaning, would require realization by a person charged with giving such report that one officer was reporting the accident, while a second, who asked the same questions, was not reporting the accident.” Supra, at 129 So.2d 706.
In the Elder case, the Fourth District Court of Appeal expanded upon the Nash decision and stated that:
“[T]he only possible indication of a different character of investigation was the fact that Walsh advised Ackerman of his constitutional rights; but then, so did McDonough during his interrogation for the accident report. How is a 16 year old boy at the scene of a serious auto accident and the emotional upset which usually accompanies such an experience supposed to discern the nuances of the dichotomy existing between investigations for automobile accident reports and investigations for the criminal aspects of automobile accidents? The trial judge found here that the evidence did not show that Ackerman understood that Walsh’s capacity was different than McDonough’s.
*912 “The solution to the problem presented in these cases is relatively simple. Law enforcement officers investigating accidents must be aware of the ramifications associated with taking statements from drivers in accident cases. When the investigation conducted to make the 316.066 report is concluded and the investigation into possible criminal aspects of the accident commences the driver should be advised of that fact. To do any less simply erodes the protection which the Legislature affords drivers in order to obtain accurate information for reports of automobile accidents.” Supra, at page 1002.
Sub judice, as it appears from the record that Officer Hinman did not advise fifteen year old Helen that he was investigating a possible homicide; that his report would not be made a part of the traffic accident report to be filed in Tallahassee; or that his report was different than any other police officer’s report prepared during the accident investigation, it is our opinion that the trial judge erred in admitting into evidence the statement given to Officer Hinman.
Accordingly, based upon the above reasons and authorities cited, the judgment appealed is reversed.
Reversed.