ERVIN, Judge.
In this personal injury action, Woodward appeals a judgment entered following a jury verdict absolving appellees from any liability. Woodward argues, among other things, that the trial court erred in excluding the results of a field sobriety test made at the scene of an automobile accident. Finding that those results are not protected by the statutory provisions of Section 316.-066(4), Florida Statutes (1977), we reverse in part and remand.
While walking across the street, Woodward was struck by an automobile and injured. Shortly after the accident, a sheriff’s officer administered a field sobriety test to the driver who, unable to keep his balance or touch his nose, failed the test. At trial, the court held that since the test’s results were obtained prior to an arrest, they were privileged information because part of an accident investigation, and therefore inadmissible.
Those provisions of Section 316.066(4), making confidential accident reports “by persons involved in accidents,” were enacted by Chapter 20578, § 17, Laws of Fla. (1941). As first interpreted, the statute was generally applied to exclude statements made by motorists or other persons involved in accidents that comprised part of the report such persons were required by law to give. Stevens v. Duke, 42 So.2d 361 (Fla.1949); Herbert v. Garner, 78 So.2d 727 (Fla.1955); Nash Miami Motors, Inc. v. Ellsworth, 129 So.2d 704 (Fla. 3d DCA 1961). Later, the statute was construed as excluding nontestimonial evidence (an analysis for blood alcohol content) because the test formed a portion of the officer’s accident report. Cooper v. State, 183 So.2d 269 (Fla. 1st DCA 1966). The Cooper rule was approved by the Florida Supreme Court in State v. Coffey, 212 So.2d 632 (Fla.1968), the court observing that since the officer in Cooper caused the blood sample to be withdrawn for the purpose of completing his accident report, doubt was cast upon the “capacity of the defendant to understand that she was not required to take the blood test.” 212 So.2d at 634. Coffey, however, in the case before it, upheld the admissibility of the blood test which was obtained with the defendant’s consent.
*702 State v. Coffey permitted the admission of blood test results as evidence if three conditions were met: (1) the motorist consents to the test, (2) there is probable cause to believe a crime was committed in the operation of a motor vehicle, and (3) the accident report was completed before the test is given. The Coffey rule was modified by the Florida Supreme Court’s last construction given the statute in State v. Mitchell, 245 So.2d 618 (Fla.1971), holding it immaterial whether a defendant gives consent to the withdrawal of blood because a blood sample is not a self-incriminating, testimonial communication which is barred by the Fifth Amendment,[1] citing Schmerber v. California, 384 U.S. 757, 763, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). Neither is it necessary to place a defendant under arrest at the time the sample is taken so long as there is a “ ‘clear indication’ of ‘relevance and likely success of a test of the [defendant’s] blood for alcohol’ ” as well as a compliance with the requirements of Section 322.261, Florida Statutes. 245 So.2d at 622. Finally, the accident report need not be filed or completed prior to the time the blood test is administered. However, Section 316.066 may still bar the use of blood alcohol analyses as evidence if “the information sought to be excluded was taken by the investigating officer for the purpose of making his accident report and formed a basis for that report.” Id. at 623.
Whatever construction was placed upon Section 316.066 by the courts as to tests for alcohol, the statute has never been interpreted as either sanctioning or disapproving field sobriety tests.[2] Both State v. Coffey and State v. Mitchell have held that the statute applies only to “statements”[3] the driver is compelled to make in order to comply with his statutory duty, and that the statute, being in derogation of common law, must be strictly construed “ ‘in the sense that no situation should be held within its operation to which the legislature did not clearly intend to accord the privilege.’ ” State v. Coffey, supra at 635; Wise v. Western Union Telegraph Co., 177 So.2d 765 (Fla. 1st DCA 1965). Given that construction, we do not consider it was within the rational contemplation of the legislature that the results of a field sobriety test, involving as they do an officer’s observations of an inebriate’s compelled responses to such orders that he touch his nose, walk a straight line, or perform other feats of agility, be clothed with the protective mantle of statutory immunity, notwithstanding that those observations may later be reduced to writing and become part of the accident report.
The only nontestimonial communication ever held barred by the statute’s provisions from introduction into evidence was a chemical test for blood alcohol content. See Cooper v. State, supra. Certainly there ex *703 isted compelling public policy reasons for barring such tests for use against the inebriate at trial unless he gave his consent, even in the absence of any Fifth Amendment inhibition making them inadmissible. The preclusion of blood alcohol analyses as evidence has historical antecedents, a fact noted in Coffey by its quote from Touchton v. State, 154 Fla. 547, 18 So.2d 752, 753 (1944):
“ ‘Evidence resulting from a medical examination of accused for the purposes of the prosecution rather than for treatment, after an accusation has been made against him, is admissible where, in the absence of any compulsion, accused submits or consents to the examination.’ ” (e. s.)
Or, as stated in Wragg v. Griffin, 185 Iowa 243, 252, 170 N.W. 400, 2 ALR 1327, 1333 (1919): “Even when charged with the gravest of crimes, [a defendant] cannot be compelled to give evidence against himself, nor can the state compel him to submit to a medical or surgical examination, the result of which may tend to convict him of a public offense. . .” See also State v. Height, 117 Iowa 650, 91 N.W. 935, 59 L.R.A. 437 (1902); State v. Newcomb, 220 Mo. 54, 119 S.W. 405 (1909). The same repugnance does not attend the results of a field physical sobriety test, which obviously are not obtained-as is a blood sample-by extracting a defendant’s body fluids for the purpose of prosecuting him.
Since we are required to place a strict interpretation upon the statute, we decline to extend Section 316.066(4)’s protective immunity to any nontestimonial communication other than a chemical test for alcohol, which, as we have previously observed, fn. 1, is now governed by the procedure provided in Section 322.261. We therefore conclude that the statute does not bar the results of a physical coordination test into evidence even though they may have been the product of coercion[4] and used by the officer as an aid in completing his accident report.
The only remaining obstacle to the reception of such evidence is the unreasonable search and seizur clause of the Fourth Amendment. A seizure of a person’s body is a “serious intrusion upon the sanctity of the person . . . . ” Terry v. Ohio, 392 U.S. 1, 17, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and the detaining officer’s conduct will be tested “by the Fourth Amendment’s general proscription against unreasonable searches and seizures.” 392 U.S. at 20, 88 S.Ct. at 1879. For example, detentions for the sole purpose of obtaining fingerprints are subject to the constraints of the Fourth Amendment. Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969). Thus, before one may stop a motorist and require him to submit to a physical sobriety test, there must be, as stated in State v. Mitchell, “ ‘a clear indication’ of ‘relevance and and likely success of a test . . . for alcohol.’ ” Here the requirements of the Fourth Amendment were fully complied with because, before conducting the test, the officer smelled alcohol on the motorist, noticed his gait was unsteady, and his speech slurred. Consequently, the officer had before him a clear indication of the relevance for the test and proceeded reasonably in seeking it.
We have considered Woodward’s remaining points and find them unavailing.
AFFIRMED in part, REVERSED in part, and remanded for new trial.
ROBERT P, SMITH, Jr., J., concurs.
WENTWORTH, J., dissents with opinion.

.The provisions of Section 316.066(4), insofar as they have been construed as permitting the admissibility of chemical tests for intoxication, notwithstanding the absence of consent, have apparently been superseded by those provisions of Section 322.261, first enacted by Section 1, Ch. 67-308, Laws of Florida, effective July 1, 1968. That statute has been interpreted as barring the results of chemical tests as evidence unless the motorist first gives his consent to submit to the tests. State v. Riggins, 348 So.2d 1209 (Fla. 4th DCA 1977); Lytwyn v. State, 353 So.2d 222 (Fla. 1st DCA 1977); McDonald v. State, 364 So.2d 1241 (Fla. 2d DCA 1978); Smith v. State, 378 So.2d 281 (Fla.1979); Sambrine v. State, 386 So.2d 546 (Fla.1980). And, if the driver refuses consent, he must suffer the sanction of having his license suspended for the statutory period. Sambrine v. State, supra.

. State v. Liefert, 247 So.2d 18 (Fla. 2d DCA 1971), without discussing the statute, held admissible such results even in the absence of any determination whether they were for the declared purpose of completing an accident report, as required by the statute.

. Precisely what Coffey and Mitchell meant by “statements” is unclear. At first blush one might conclude the statute only precludes testimonial communications as evidence. See Mitchell at 620-21. Yet Mitchell goes farther, holding that the statute shields blood samples from use as evidence if they are taken for the purpose of making an accident report and form the basis for that report. Id. at 623. For the reasons stated infra, we interpret the statute as not applying to any nontestimonial communication other than a test for blood alcohol content.

. An important caveat to the above statement is that the force used must not be so excessive as to violate fundamental principles of due process, i. e. the “conduct [must not be] that [which] shocks the conscience.” Rochin v. California, 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952). Compare the facts in Rochin (forced removal of evidence from a defendant’s body by a stomach pump) with those in Breithaupt v. Abram, 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448 (1957) (blood sample taken from an unconscious person “under the protective eye of a physician” did not offend the 14th Amendment).