448 So.2d 1201 (1984)
James A. ADAMS, Appellant,
v.
The STATE of Florida, Appellee.
No. 82-2136.
District Court of Appeal of Florida, Third District.
April 24, 1984.
*1202 Bennett H. Brummer, Public Defender and Harry W. Prebish and Gregory Prebish, Sp. Asst. Public Defenders, for appellant.
Jim Smith, Atty. Gen. and Calvin L. Fox, Asst. Atty. Gen., for appellee.
Before SCHWARTZ, C.J., and HUBBART and FERGUSON, JJ.

ON MOTION FOR REHEARING
FERGUSON, Judge.
The defendant appeals his conviction for manslaughter by operation of a motor vehicle while intoxicated, claiming that the trial court improperly denied his motion to suppress the results of a blood-alcohol test.
The State maintains that appellant, while driving under the influence of alcohol, crossed the center lane of a residential street and collided head-on with another automobile causing serious bodily injury to the occupant of the other vehicle. Sergeant Molinari of the Public Safety Department arrived at the scene after the accident. He observed that appellant had bloodshot eyes, slurred speech, and an odor of alcohol, and was unsteady on his feet. Officer Molinari arrested Adams and charged him with driving under the influence of alcohol. He told Adams that he was going to take him to Ward D of the hospital to be treated for his minor injuries.
Upon arriving at the hospital, the officer did not request any treatment for Adams, but instead took him to the emergency room for a blood test. Appellant executed a hospital consent form that was given to him by the officer. A hospital physician, who said nothing to appellant about the reason for the blood sampling, drew appellant's blood for the purpose of examination. After the blood was taken, Sergeant Molinari took appellant back to Ward D (prison ward of the hospital) and placed him in a cell. Molinari shortly thereafter received a call from Detective Dorn, who was also at the scene of the accident, informing him that the driver of the other vehicle had expired. Detective Dorn then took over to begin a homicide investigation.
Appellant moved to suppress the results of the blood test as being inadmissible as evidence in the criminal prosecution, relying on Section 316.066(4), Florida Statutes (1981). The trial court denied the motion to *1203 suppress. As the motion was well-founded, we reverse.
Section 316.066(4) deals with accident reports made by persons involved in accidents, and provides in pertinent part: "No such report shall be used as evidence in any trial, civil or criminal, arising out of an accident... ." Initially, this provision was applied to exclude statements required by law to be made by persons involved in accidents when such statements comprised a part of the accident report. Stevens v. Duke, 42 So.2d 361 (Fla. 1949); Nash Miami Motors, Inc. v. Ellsworth, 129 So.2d 704 (Fla. 3d DCA 1961), cert. dismissed, 142 So.2d 733 (Fla. 1962). In Cooper v. State, 183 So.2d 269 (Fla. 1st DCA 1966), the court first interpreted the provision to require suppression of a blood sample test when it was taken as part of an investigation for the declared purpose of completing the accident report.
The Florida Supreme Court approved the Cooper decision in State v. Coffey, 212 So.2d 632 (Fla. 1968), but held on dissimilar facts that a blood test was admissible where the respondent was made aware that the accident-report phase of the investigation had ended, and the test was being given in connection with possible criminal charges. While the Cooper decision had focused on whether the blood test was administered for the purpose of completing the accident report, the Florida Supreme Court in Coffey seemed more concerned with the respondent's knowledge that the accident investigation had ended and a criminal investigation had begun. Thus, the Coffey court noted that after completing the accident report, the same investigator could "change his hat" and begin a criminal investigation, thereby ensuring that the accused's constitutional rights are protected. See 212 So.2d at 635 (statute designed in part to protect right against self-incrimination).[1]
Despite a later modification of the Coffey holding, numerous decisions still look to the accused's knowledge that the accident investigation has ended as the dispositive factor in ruling on a statement's admissibility under the accident report statute. See Martinez v. State, 425 So.2d 181 (Fla. 3d DCA 1983) (motion to suppress statement made at stationhouse properly denied where defendant was sufficiently alerted to fact that accident report phase of investigation had ended and homicide investigation begun); Porter v. Pappas, 368 So.2d 909 (Fla. 3d DCA 1979) (statement inadmissible where officer did not advise minor defendant that report was part of homicide investigation rather than traffic accident investigation); Elder v. Robert J. Ackerman, Inc., 362 So.2d 999 (Fla. 4th DCA 1978), cert. denied, 368 So.2d 1366 (Fla. 1979) (statement inadmissible where tortfeasor not apprised of distinction between detective's interrogation and the accident investigation). In the instant case, there is no evidence that appellant was informed, or by other means might have known, that the blood test was being administered to him as part of an investigation for the crime of manslaughter by operation of a motor vehicle while intoxicated.[2]
*1204 Subsequently, the Florida Supreme Court had an opportunity to revisit its holding in Coffey when taking certiorari review in State v. Mitchell, 245 So.2d 618 (Fla. 1971). The second district had interpreted Coffey to require suppression of any blood test which was taken before the accident report was completed. In rejecting this construction, the court set forth a new rule for statutory exclusion and thereby returned to the near-forgotten Cooper rationale. Under Mitchell, the test for suppression is "whether the information sought to be excluded was taken by the investigating officer for the purpose of making his accident report and formed a basis for that report." [e.s.] 245 So.2d at 623. The fact that the accident report was filed subsequent to the taking of the blood test was held not to justify an inference that the test was taken for, or formed a basis for, the report.
In the present case, not only was the test taken prior to the investigating officer's completion of the accident report, but further, the following colloquy at trial reveals that the blood test was taken for the express purpose of completing the report, and was made a part of the report. On cross-examination of Sergeant Molinari, the officer testified as follows:
Q. As I understand it, your situation as far as the accident scene was concerned, you were there for the purpose of investigating the accident, right?
A. Correct.
Q. You were taking him to Jackson Hospital for treatment for injuries and giving of the blood test in connection with your accident investigation, right, sir?
A. Correct.
Q. Now, I would like to speak to you briefly about the accident report. I have an extra copy.
* * * * * *
Q. Now, with regard to the word, "chemical tests," we see this toward the bottom of the page. The word "chemical tests," there is some marks "Driver Number 1"; the block is marked, "no driver." Number 2, the block marked is "yes." Then beside that word, "blood," and this was inserted by you?
A. Yes.
Q. This was in connection with your preparation and taking of the blood in this case?
A. Yes. It simply indicates that there was blood analysis taken.
Q. This is part of your investigation, taking the blood, filling out the report and making what other investigations you made in connection with this case, right, sir?
A. Yes.
The responses given by Officer Molinari show clearly that he gave appellant the blood test for the purpose of completing the accident report and that the test did, in fact, become a part of the report. Under the rule set forth in Mitchell, then, the blood test results are inadmissible and the trial court erred in denying appellant's motion to suppress. Accord Duval Motor Co. v. Woodward, 419 So.2d 303 (Fla. 1982) (results of field sobriety test inadmissible where information obtained as a part of accident investigation for use in preparing accident report); cf. Barrentine v. Makely, 406 So.2d 1237 (Fla. 2d DCA 1981) (results admissible where officer affirmatively testified that neither the blood test nor its results were necessary to his accident report); McKissack v. State, 243 So.2d 14 (Fla. 3d DCA 1971) (evidence of blood test admissible where defendant made no showing that any information obtained was used in accident report). See generally State v. Edge, 397 So.2d 939 (Fla. 5th DCA), rev. denied, 407 So.2d 1103 (Fla. 1981) (combining Coffey and Mitchell tests, court finds results of blood test admissible where trooper who arranged for taking of blood sample was not responsible for making traffic accident report and where appellee *1205 was specifically told that sample was needed for homicide investigation).
Reversed and remanded for a new trial.
NOTES
[1] Although the fifth amendment to the United States Constitution has been held inapplicable to the taking of a blood sample, Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), the State of Florida has the right to extend to its citizenry greater protections than those afforded by the federal constitution. Sambrine v. State, 386 So.2d 546, 548 (Fla. 1980).
[2] We note that the statute has now been changed and that a suspect in such cases may be forced to submit to a blood test if there is probable cause that an accident involving death or serious bodily injury was committed through the operation of a motor vehicle while intoxicated. The new statute, Section 316.1933, Florida Statutes (Supp. 1982), did not become effective until after the date of the offense. As the statute is substantive in nature, see Coffey, 212 So.2d at 635 (statute designed in part to protect constitutional right against self-incrimination), it will not be applied retrospectively to pending proceedings. Keystone Water Co. v. Bevis, 278 So.2d 606 (Fla. 1973); Marshall v. Johnson, 301 So.2d 134 (Fla. 1st DCA 1974). See also State v. Lavazzoli, 434 So.2d 321 (Fla. 1983) (constitutional amendment mandating conformity of interpretation of state constitutional rule with United States Supreme Court's interpretation of fourth amendment altered substantive right, and would not be applied retrospectively). Thus, we presently need not determine the effect of this new provision on established case law.