BLACK, Judge.
Denise and Phillip Sottilaro, defendants below in this wrongful death action, appeal the final judgment entered in favor of Maricela Figueroa, as the personal representative of the Estate of Christopher Cepeda. This case arose after Ms. Sottila-ro hit fourteen-year-old pedestrian Christopher Cepeda with her motor vehicle, causing his death. Following trial, the jury returned a verdict finding Denise Sot-tilaro seventy percent comparatively negligent and Christopher Cepeda thirty percent at fault. It awarded the Estate $50,733.59 for past medical bills and $1.325 million for pain and suffering. Based on the seventy percent comparative negligence finding, the final judgment entered in favor of the Estate was $35,513.51 for past medical bills and $927,500 for pain and suffering. The Sottilaros raise several issues on appeal, the most significant of which is the trial court’s erroneous interpretation of the accident report privilege which led to the exclusion of impeachment evidence for key witnesses. Because the trial court incorrectly concluded that the accident report privilege is applicable to statements made by uninvolved witnesses as a matter of law, we reverse and remand for a new trial. As a result, we also reverse the trial court’s award of costs based on the Estate’s status as the prevailing party. The other issues raised on appeal are moot due to our remand for a new trial.
I. BACKGROUND FACTS
On September 21, 2008, Mr. Cepeda and four of his friends spent the day playing basketball. When it started to get dark, they began walking back home. Along the *507 way, the group had to cross U.S. 27, a major, four-lane highway with a wide, grassy median and a posted speed limit of sixty-five miles per hour. After Mr. Cepe-da and his friends crossed the two northbound lanes, they regrouped in the median and prepared to cross the two southbound lanes. At the same time, Ms. Sottilaro was driving southbound along the highway. She testified that she was travelling at approximately sixty to sixty-five miles per hour in the right lane, but when she saw a vehicle preparing to turn ahead of her, she moved to the left lane. She stated that as she changed lanes, she suddenly saw Mr. Cepeda appear in front of her car and that he was turned at an angle where his back was to her. Although Ms. Sottilaro hit her brakes, she also immediately hit Mr. Cepe-da. He later died from his injuries.
Approximately an hour after the accident, several of Mr. Cepeda’s friends provided sworn testimony to a deputy sheriff about the events surrounding the accident. They stated that Mr. Cepeda was looking down at his phone and texting while crossing the highway. The deputy included these statements in his traffic fatality investigation report.
During pretrial, the parties extensively argued whether or not defense counsel could admit the traffic fatality investigation report. Defense counsel indicated that he might use the report to refresh the investigating officer’s recollection or for impeachment of witnesses. The court ultimately concluded that it would not speculate on the purpose for which defense counsel wanted to use the report and that it would make a decision on the admission of the report when defense counsel raised the issue during the trial.
At trial, only one of the witnesses who provided a sworn statement to the deputy testified in person. Prior to cross-examination of that witness, defense counsel requested a sidebar to discuss whether or not he could use the report for impeachment. The trial court concluded that this court’s decision in Williams v. Scott, 153 So.2d 18 (Fla. 2d DCA 1963), was controlling and that “since [defense counsel was] asking for guidance from the court as to whether [he could] ask — impeach [the witness] from ... the traffic report[, the court was] going to have to say no, you cannot.” The witness then testified on cross-examination that he did not know whether Mr. Cepeda was texting or not. The Estate’s counsel provided the other ■witnesses’ testimony by way of deposition, and consistent with the court’s previous ruling on the accident report privilege, the portions of the deposition testimony where the Sottilaros’ counsel impeached the witnesses with their prior statements to the deputy were redacted.
After trial, the Sottilaros filed a motion for new trial. During the hearing on the motion, the court reiterated its reliance on Williams, stating, “I think if it weren’t for the Second District Court of Appeal case law that was cited to me, I probably would have agreed with you during the trial and allowed those statements of those witnesses to come in as prior inconsistent statements from what they testified during trial.”
II. ANALYSIS
Typically, a trial court’s ruling on the admissibility of evidence is subject to an abuse of discretion standard of review. Pantoja v. State, 59 So.3d 1092, 1095 (Fla.2011). “However, a court’s discretion is limited by the evidence code and applicable case law. A court’s erroneous interpretation of these authorities is subject to de novo review.” Id. (quoting McCray v. State, 919 So.2d 647, 649 (Fla. 1st DCA 2006)). Here, the trial court’s ruling on *508 the accident report privilege was an incorrect interpretation of the law.
Section 316.066(5), Florida Statutes (2010)[1], provides:
Except as specified in this subsection, each crash report made by a person involved in a crash and any statement made by such person to a law enforcement officer for the purpose of completing a crash report required by this section shall be without prejudice to the individual so reporting. No such report or statement shall be used as evidence in any trial, civil or criminal. However, subject to the applicable rules of evidence, a law enforcement officer at a criminal trial may testify as to any statement made to the officer by the person involved in the crash if that person’s privilege against self-incrimination is not violated.
The purpose of the statutory privilege is to “ensure that the state does not violate an individual’s constitutional privilege against self-incrimination when he or she is compelled to truthfully report to law enforcement the facts surrounding an automobile accident.” State v. Cino, 931 So.2d 164, 168 (Fla. 5th DCA 2006); see also State v. Norstrom, 613 So.2d 437, 440 (Fla.1993) (stating that the purpose of the privilege is “to ensure that accident information could be compelled without Fifth Amendment violations”).
However, the statutes requiring an accident report and the case law interpreting those statutes demonstrate that the privilege only applies to a driver, owner, or occupant of a vehicle because those are the only people compelled to make a report under the statutes. See § 316.066(1) (requiring a driver to make a report when involved in a crash where there is bodily injury, death, or damage to a vehicle); § 316.062(1) (requiring a driver to give his or her information to a police officer upon request when a crash results in injury or death); § 316.064(2) (requiring the occupant of a vehicle to make a report under sections 316.065 and .066 when the driver is physically incapable of making a report); § 316.064(3) (requiring the owner of a vehicle to make a report under chapter 316 when the driver is physically incapable); § 316.065(1) (requiring the driver of a vehicle involved in a crash resulting in injury or death to report the accident to the police); see also Brackin v. Boles, 452 So.2d 540, 544 (Fla.1984) (“We clearly and emphatically hold that the purpose of the statute is to clothe with statutory immunity only such statements and communications as the driver, owner, or occupant of a vehicle is compelled to make in order to comply with his or her statutory duty under section 316.066(1) and (2).”); S.G.K. v. State, 657 So.2d 1246, 1247-48 (Fla. 1st DCA 1995) (concluding that section 316.066(3)(a) does not require “witnesses to the accident to stay at the scene or report to investigating officers” (citing §§ 316.061, 316.062, 316.066(3)(a), Fla. Stat. (1993))); Cino, 931 So.2d at 167-68 (finding the accident report privilege stat *509 ute did not bar an investigating officer from testifying regarding statements made to him by anyone other than the defendant “because doing so would in no way violate the non[ jdefendant declarant’s privilege against self-incrimination”).
The Fourth District’s decision in McTevia v. Schrag, 446 So.2d 1183 (Fla. 4th DCA 1984), also supports the proposition that the privilege only applies to the driver, owner, or occupant of the vehicle. Id. at 1184 (concluding “[the] privilege inures only to those required to make the report.” (citing State v. Coffey, 212 So.2d 632, 634 (Fla.1968), receded from on other grounds by, Brackin, 452 So.2d at 542; State v. Edge, 397 So.2d 939, 942 (Fla. 5th DCA 1981); and Lobree v. Caporossi, 139 So.2d 510, 512-13 (Fla. 2d DCA 1962))).
The Estate argues that the accident report privilege applies to the witnesses in this case because they were “involved in the crash” as required by section 316.066(5). It also argues that the cases relied upon by the Fourth District in McTevia are inapposite to this case. While we agree that the cases cited in McTevia are factually distinguishable from this case, the McTevia case itself is factually similar to this case and the Fourth District’s reasoning, along with the reasoning of the cases cited, is more applicable.
In McTevia, Mr. and Mrs. McTevia were plaintiffs in the trial court, seeking recovery for injuries from a car accident. 446 So.2d at 1184. At the time of the accident, Brien Epstein, a friend of the McTevias, had been following them in his car. At the scene of the accident, Mr. Epstein told the investigating officer that he did not witness the accident; however, two weeks later he appeared at the police station and admitted that he did see the accident. The McTevias moved in limine to exclude any evidence of Mr. Epstein’s first statement, claiming that it was protected under the accident report privilege. The trial court initially granted the motion, but after studying the question more closely, it ruled the evidence admissible. Id.
The Fourth District affirmed the trial court’s ruling, concluding that the accident report privilege “inures only to those required to make the report” and “does not apply to statements of other witnesses or persons who may volunteer information to the investigating officer.” Id. at 1184-85 (citing Coffey, 212 So.2d at 634; Edge, 397 So.2d at 942; and Lobree, 139 So.2d at 512-13). The court reasoned that only certain persons were required to make a report under the statute and that “[t]he privilege is constitutionally mandated because the statutes require a report under penalty of law and in certain instances the report could otherwise be in derogation of one’s Fifth Amendment rights.” Id. at 1185 (citing Coffey, 212 So.2d at 635). Based on this, the court concluded: “Epstein was not required by law to report to the investigating officer; he was therefore not involved in the accident within the meaning of [the statute]. Thus, the testimony regarding Epstein’s change in story was admissible.” Id.
Similar to McTevia, the statements the Sottilaros sought to use at trial here were from witnesses and not anyone involved in the accident. The witnesses were not required to make a report under the statute, and there was no concern regarding the witnesses’ rights against self-incrimination. See Lobree, 139 So.2d at 512 (“Under the familiar rule of construction ‘expressio uni-us est exclusio alterius,’ the express limitation of the privilege to the reports ‘made by persons involved in accidents’ is an implied exclusion of the privilege of the reports of other persons who were not involved in the accident.”); Coffey, 212 So.2d at 634-35 (concluding accident report privilege only applied to statements *510 from those required to make an accident report and results from a blood alcohol test were admissible because defendant’s right against self-incrimination was not protected under the accident report privilege when defendant knew he was being criminally investigated and he consented to the test); Edge, 397 So.2d at 942-43 (same).
As it did in the trial court, the Estate also argues that this court’s opinion in Williams is controlling. However, we find that case distinguishable. In Williams, the issue concerned the admissibility of a statement given to an investigating officer by the pedestrian who was struck by the defendant. 153 So.2d at 19. The pedestrian gave a statement to the officer while she was in the hospital. Id. At trial, the officer testified, “I definitely recall the impression that she did not know what color the light was.” Id. In concluding that the accident report privilege protected the pedestrian’s statements, the court stated:
It is true that §§ 317.12-317.15 F.S.A.[2] do not specifically require an involved pedestrian to make an accident report; but if he does in fact make a ‘report’ to an inquiring official investigator, we think his statements come within the protective cloak of § 317.17 F.S.A. The latter section, as previously noted, provides that ‘[a]ll accident reports made by persons involved in accidents shall be without prejudice to the individual so reporting .... ’ (emphasis added)[.] This language does not restrict immunity to those who are required to report, and we are unable to read such restriction into the section by reference to other sections.
It is settled that the rights and responsibilities of motorists and pedestrians are reciprocal. Since both are held to the same standard of ordinary care, presumptively they are entitled to reciprocal rights and immunities as litigants. The admission of the pedestrian’s report in such a case while excluding the driver’s report would do violence to this concept as well as to the plain language of § 317.17 supra.
Id. at 19-20 (citations omitted).
The facts in this case are different from those in Williams. At issue here are statements made by witnesses to the accident and not a pedestrian involved in the accident. Moreover, the reasoning of the Williams court is inapplicable in this case. The Williams court reasoned that the accident report privilege covered the pedestrian’s statement because motorists and pedestrians have reciprocal rights and responsibilities and are held to the same standard of care. However, witnesses do not have those same rights and responsibilities. Because witnesses are not involved in the accident and because they do not have any rights or responsibilities regarding the accident, we find Williams inapplicable to the facts of this case.
The pivotal issue at trial was fault, and the main point of contention was whether Mr. Cepeda was in the roadway when Ms. Sottilaro hit him or whether he was in the median. The jury was clearly concerned with this issue because it submitted questions regarding Mr. Cepeda’s location at the time of impact to one of the officers who testified. Crucial to this issue was whether Mr. Cepeda was texting and not paying attention while crossing the highway. Because the trial court erred as a *511 matter of law in excluding impeachment testimony of key witnesses regarding this issue, we reverse and remand for a new trial.
Having reversed the underlying judgment, we also reverse the trial court’s award of costs to the Estate since the statutory basis for the award of costs is dependent on the judgment obtained. See § 57.041(1), Fla. Stat. (2010).
Reversed and remanded for a new trial.
WALLACE and LaROSE, JJ., Concur.

. Although we recognize that the 2008 statute would apply to any substantive duty to report under the statute, the issue on appeal is a procedural issue; thus, the statute in effect at the time of the trial is the applicable statute. See Benyard v. Wainwright, 322 So.2d 473, 475 (Fla. 1975) ("Substantive law prescribes the duties and rights.... Procedural law concerns the means and method to apply and enforce those duties and rights.”). The legislature amended section 316.066 in 2011 and subsection (5) was renumbered and is now subsection (4). See ch. 11-66, § 7, at 971, Laws of Fla. However, the 2011 amendments did not take effect until July 1, 2011, and the trial in this case began on January 3, 2011; therefore, the 2010 statute is the applicable statute. See ch. 11-66, § 33, at 993, Laws of Fla.

. We note that the legislature renumbered and revised chapter 317 in 1963. See ch. 63-175, § 1, Laws of Fla. It then repealed chapters 186 and 317 in 1971 and enacted the Florida Uniform Traffic Control Law under chapter 316, which covered the same subject matter as chapter 317. See ch. 71-135, §§ 1, 2, at 433-551, Laws of Fla.