225 So.2d 321 (1969)
Willie Pinkney WILSON and Fulton Lewis Terrell Wilson, Appellant,
v.
STATE of Florida, Appellee.
No. 36677.
Supreme Court of Florida.
July 9, 1969.
*322 Johnson & Marshall, Jacksonville, for appellant.
Earl Faircloth, Atty. Gen., and Wallace E. Allbritton, Asst. Atty. Gen., for appellee.
WILLIS, BEN C., Circuit Judge.
The appellants, Willie Pinkney Wilson and Fulton Lewis Terrell Wilson, were defendants in the trial court in which they were charged in an indictment with murder in the first degree of one Henry Ashton Bragg. The indictment was returned by the grand jury of Marion County, but pursuant to motion by the defendants a change of venue was granted and the trial was conducted in the Circuit Court of Alachua County. The defendants each pleaded not guilty and were accorded a jury trial resulting in convictions of murder in the first degree without recommendation of mercy. Motions for a new trial were denied and the sentence of death was imposed on each defendant. From the judgments and sentences the defendants have perfected their appeal direct to this Court pursuant to Sec. 4(2), Art. V, Fla. Const., F.S.A., which, among other things, provides: "* * * [a]ppeals from trial courts may be taken directly to the supreme court, as a matter of right, * * * from judgments imposing the death penalty * * * ".
We have considered not only the matters which have been urged in the briefs and argument of counsel but also have carefully examined the record to "review the evidence to determine if the interests of justice require a new trial" as required by Sec. 924.32(2), Fla. Stat., F.S.A., and also to ascertain if any other fundamental error occurred which would require a reversal or modification.
We have concluded that the judgments and sentences are free from reversible error and affirm the trial court.
The appellants have raised five points which they contend render the judgments defective. In substance they are as follows:
1. Sec. 919.23, Fla. Stat., F.S.A., violates Sec. 4, Decl.Rights, Fla. Const., 1885, F.S.A., in that by delegating to the jury in a capital case the power to fix the penalty as death or life imprisonment the defendants in such cases are denied "due course of law" as the established role of the jury is solely to determine facts and it is the trial judge's function and prerogative to fix punishment. Nelson v. McMillan, 151 Fla. 847, 10 So.2d 565 is cited in support of this contention;
2. Sec. 919.23, Fla. Stat., F.S.A., is also void as violating the due process clause of the Fourteenth Amendment to the federal constitution because it fails to set up any standards to guide jurors in determining whether or not to recommend mercy in a capital case which controls the punishment as death or life imprisonment.
3. Defendants were denied the right of counsel and other rights in violation of federal constitutional due process when they were taken to a hospital and given blood tests to determine their blood types without being afforded the right of counsel at that time, and in the admission of the results of such tests at the trial;
4. The death penalty is "cruel and unusual punishment" in violation of the Eighth Amendment as made applicable to the states by the Fourteenth Amendment to the federal constitution.
5. The exclusion of certain veniremen who expressed opposition to the death penalty violated constitutional due process within the rulings of Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed. 776 (1968).
It is significant that no attack is made on the findings by the jury of the guilt of the defendants of the crime of murder in the first degree. It is only the death penalty that is assaulted. The evidence, though *323 entirely circumstantial, is abundantly substantial and convincing that the defendants, acting in concert and in the perpetration of a robbery, bludgeoned to death a filling station attendant, a man in his fifties, in the early hours of March 13, 1967. The record reveals that competent, aggressive and capable counsel was provided the defendants, that the trial was conducted in an orderly manner with great care exercised to comply with the rules of evidence and procedure, that the instructions to the jury were appropriate and complete, and that every reasonable safeguard to due process and fair trial was exercised.
Turning to the above points raised by the defendants they will be discussed in the order above mentioned.

(1)
The attack on Sec. 919.23, Fla. Stat., F.S.A., as violative of the requirement of "due course of law" required by Sec. 4 of the declaration of rights of the Florida Constitution, prior to the 1968 amendments, is based upon the language used in Nelson v. McMillan, supra, wherein it is stated:
"Within its authority to render a verdict in a trial in court upon evidence adduced under the law as given by the court, the function of the jury is exclusive in determining facts within the issues being tried; but under the law the validity of the verdict rendered is to be determined by the court and is subject to authorized judicial review, to the end that `right and justice shall be administered * * * by due course of law.' Sec. 4, Declaration of Rights, Florida constitution." (Emphasis by court).
In that case the court had for consideration the "guest statute", Sec. 320.59, Fla. Stat., F.S.A., which limits the liability of the owner or operator of a motor vehicle for injuries incurred by a guest passenger in the vehicle to damage caused by gross negligence or wilful and wanton misconduct in the operation of the vehicle. The statute provides that "the question or issue of negligence, gross negligence, and willful or wanton misconduct, and the question of proximate cause, and the issue or question of assumed risk, shall in all such cases be solely for the jury".
The court held that the statute would have to be construed to avoid conflict with the provision of Article II of the state constitution which forbids the legislative department from the "exercise [of] any powers appertaining to" the judicial department. It was observed that the statute could not interfere with the exercise by the courts of the judicial functions of determining the validity of and in exercising review of the verdict of a jury.
The appellants thus contend that under said Sec. 919.23 considered in connection with Sec. 782.04, Fla. Stat., F.S.A., there is an invalid delegation to the jury of the power to award punishment which is a prerogative of the court. The Nelson v. McMillan case merely holds that the legislature may not invade the powers of the judicial department to prevent the trial court and the proper appellate court from reviewing the validity of the verdict in pursuit of their duty to assure that right and justice is administered by due course of law.
It is within the prerogative of the legislature to define crimes and to prescribe the punishments which may be awarded. See Chapman v. Lake, 112 Fla. 746, 151 So. 399. Ordinarily the punishments authorized are within specified limits and discretion is accorded the trial judge to impose such authorized punishment as he deems appropriate. However, the range of penalties and the alternatives are subject to legislative prescription and may be narrow or broad, or be limited to many or few dispositions or even to just one.
Murder in the first degree is defined in Sec. 782.04, Fla. Stat., F.S.A., and the punishment prescribed for it there is *324 death.[1] It is only in Sec. 919.23(2), Fla. Stat., F.S.A., that there is provision for a less harsh exaction for this particular crime. There it is provided that life imprisonment is the sole punishment if a majority of the jury convicting a person of a capital offense shall recommend mercy. Thus, a majority of the jury is given the power to mitigate the awful prescribed consequences of guilt of such a crime to another fixed punishment of great severity but which spares the life of the prisoner. This is not a deviation from the normal role of the jury to determine facts. First a determination must be made of the existence of facts which render the accused guilty of the crime charged. That having been done there is the consideration of the existence of facts which would warrant relieving the accused person of the supreme penalty for his crime, which Sec. 782.04 prescribes, and imposing the more merciful alternative afforded by Sec. 919.23(2). We find there is no conflict in the statute and in Sec. 4, Decl.Rights, Fla. Const., 1885.

(2)
The assault on Sec. 919.23(2), Fla. Stat., F.S.A., as failing to set up standards and guides to be followed by jurors in their consideration of the ques-of recommending mercy is also devoid of merit. Whatever criticism may be made of the absence of such standards, such would not embrace matters prejudicial to the defendant on trial, as each juror is free to vote for mercy for any reason at all. Without this statute there would be only the death penalty prescribed unconditionally in Sec. 782.04, Fla. Stat., F.S.A.
It is also contended that Sec. 919.23, Fla. Stat., F.S.A., is contradictory because in subsection (1) it permits recommendation of mercy by a jury in all cases of conviction but also provides that "[i]n all cases the court shall award the sentence and shall fix the punishment or penalty prescribed by law", and in subsection (2) it is provided that when there is such a recommendation in a capital case the punishment shall be imprisonment for life. These provisions are not contradictory. The court cannot in any case award the sentence and fix the punishment except as "prescribed by law", and in murder in the first degree the punishment prescribed by law is fixed depending only on whether or not a majority of the jury recommends mercy. There is no contradiction in the two subsections.

(3)
The contention of defendants of deprival of constitutional rights in the taking of blood samples from them and in introducing into evidence the results of tests from such samples is fully answered adversely to them in Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908. In that case this precise question was raised and it was held that the imposition of a compulsory taking of a blood sample from an accused for tests and the use of results of such tests in evidence at his trial do not violate his constitutional rights to due process of law, his privilege against self-incrimination, his right to counsel, or his right against unreasonable searches and seizures.

(4)
The next point raised is that the death penalty is cruel and unusual punishment condemned by the Eighth Amendment to the U.S. Constitution and made applicable to the states by the due process clause of the Fourteenth Amendment. This contention is based upon certain broad concepts, namely: (1) the unfettered discretion in a trial jury to choose between life or death violates the rule of law basic to due process because of lack of standards and guides and an adequate procedure to determine if the death penalty is justifiable; and (2) the death penalty inflicts loss of life without commensurate justification.
*325 The arguments advanced on the first point appear to start with the premise that the death penalty may not be the exclusive punishment for any crime, including inexcusable or unjustifiable premeditated murder or the equivalent of premeditation when perpetrated in the course of committing certain heinous crimes including robbery. Thus, it seems to be reasoned, there must be some standards and guides which the jury or the court must apply to determine if the crime is such that death is to be the punishment. There would appear to follow from this reasoning a requirement that the statute defining murder in the first degree must contain other prescribed elements necessary to be proven from the evidence to merit the supreme penalty. However, counsel has made no suggestion of what additional elements would be constitutionally required to render the death penalty legal.
This argument overlooks the fact that the statute has prescribed the standards deemed by the legislature to be sufficient to warrant the death penalty for a homicide, which are found in the specific elements of first degree murder, as distinguished from other unlawful homicides for which less severe penalties are authorized. However, since the power is given to activate a milder punishment by a majority recommendation of mercy it is argued that the death penalty becomes cruel and unusual when such a recommendation is not made.
The second point, namely the lack of justification for the death penalty is fully in the realm of the philosophical and is a matter of legislative consideration and evaluation. The Court is fully aware of the strong contentions made in many circles in support of abolishing the death penalty and of the fact that in some states and countries this has been done. However, this is still a legislative matter and the legislature of Florida has not yet seen fit to abolish this penalty from the punishments authorized for some crimes including that of which the defendants stand convicted.
The Supreme Court of the United States has not yet condemned the death penalty as unconstitutional though it has in recent years with great frequency set aside death sentences imposed in state courts but on other stated grounds. That court has in the past ruled that death is not a cruel and unusual punishment. In re Kemmler, 136 U.S. 436, 10 S.Ct. 930, 34 L.Ed. 519; Louisiana ex rel. Francis v. Resweber, 329 U.S. 459, 67 S.Ct. 374, 91 L.Ed. 422; Wilkerson v. Utah, 99 U.S. 130, 25 L.Ed. 345. Even in Witherspoon v. Illinois, supra, in footnote 21 hereinafter discussed it is recognized that in a proper case a state has the power to execute a defendant sentenced to death. However, it is urged that the death penalty has now become "unusual" because of the practical cessation of executions in the last few years as a result of declining instances in which this penalty is awarded in the courts, the reluctance of governors to sign death warrants, and the many stay of execution orders of federal and other courts, reflecting an increasing revulsion of the public to the deliberate extinguishment of life by governmental authority.
We do not relish in the least the role of participant in the legal process by which a fellow human being is put to death. However, our own preference to avoid being involved in such a soul searing matter does not permit us to resort to other than legal considerations in making a judgment on this point of constitutional law. We recognize that there can be instances where specific punishments which were formerly regarded as not cruel or unusual would become such by circumstances and changes where established custom would have virtually abolished resort to them. However, we are not prepared to conclude that the death penalty, inflicted by the means sanctioned in this state, has reached the point of being outlawed by the constitutional prohibition of cruel and unusual punishment. The legislature of the state has declined to enact laws to abolish it, though *326 it has been importuned to do so and bills to accomplish this have been introduced. The Supreme Court of the United States may in the future be disposed to make such a ruling, but until it does we feel that we are bound by pronouncements of that Court which have not been overruled and by prior precedent in this Court. See Ferguson v. State, 90 Fla. 105, 105 So. 840, error dismissed, 273 U.S. 663, 47 S.Ct. 454, 71 L.Ed. 828. The existence of stay orders of federal and other courts may not themselves render the type of punishment which is intercepted "unusual" merely because the public authorities of a state are temporarily prevented from effecting executions. We conclude that this point cannot be sustained on legal precedent or logical reasoning, nor have circumstances come to pass to activate constitutional condemnation of this penalty.

(5)
The final point is whether or not the exclusion of certain jurors because of their views on capital punishment has rendered the death sentence invalid because of denial of due process of law under the Fourteenth Amendment to the U.S. Constitution, as interpreted in Witherspoon v. Illinois, supra. This case holds that a death penalty emerging from the jury verdict in an Illinois state trial is invalid because the prosecution was allowed to exclude prospective jurors "who said that they were opposed to capital punishment and all who indicated that they had conscientious scruples against inflicting it". It was held, however, that the record did not show in that case that the jury was biased with respect to the petitioner's guilt. It was said, however:
"But it is self-evident that, in its role as arbiter of the punishment to be imposed, this jury fell woefully short of that impartiality to which the petitioner was entitled under the Sixth and Fourteenth Amendments."
Under Illinois law in effect at the time of Witherspoon's trial, the jury in a murder case determines the guilt or innocence of the accused and also, in event of conviction, fixes the punishment as death or imprisonment. Also in Illinois there was then a statute providing that it shall be a cause for challenge of any juror who shall state that he has conscientious scruples against capital punishment or that he is opposed to the same. Ill. Rev. Stat. 1959, c. 38, Sec. 743. Sec. 932.20, Fla. Stat., F.S.A., provides:
"No person whose opinions are such as to preclude him from finding any defendant guilty of an offense punishable with death shall be allowed to serve as a juror on the trial of any capital case."
Our statute is basically different from the Illinois statute in that it excludes only those whose opinions are such as to preclude a finding of guilt of a crime punishable by death. It does not preclude one who may find an accused guilty even though he has reservations against inflicting the penalty itself.
Also, Sec. 913.03(3), Fla. Stat., F.S.A., states the grounds for a challenge for cause to an individual juror, which include "* * * (3) That the juror entertains such conscientious convictions as would preclude his finding the defendant guilty * * *."
In Witherspoon, the majority opinion is careful to point out that the issue before the court "is a narrow one". And:
"does not involve the right of the prosecution to challenge for cause those prospective jurors who state that their reservations about capital punishment would prevent them from making an impartial decision as to the defendant's guilt. Nor does it involve the State's assertion of a right to exclude * * * those who say that they could never vote to impose the death penalty or that they would refuse to consider its imposition in the case before them."
Also, in footnote 21, it is said:
"We repeat, however, that nothing we say today bears upon the power of a *327 State to execute a defendant sentenced to death by a jury from which the only veniremen who were in fact excluded for cause were those who made unmistakably clear (1) that they would automatically vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before them, or (2) that their attitude toward the death penalty would prevent them from making an impartial decision as to the defendant's guilt."
In the case before us, the trial judge excused twenty-one veniremen for cause. Two of them (Washington and Walsh) were on challenge by the defense. Of the others, fifteen said they could not return a verdict of guilty if the punishment may be death,[2] one said his scruples "very well might" affect his verdict on finding whether or not a defendant is guilty,[3] one said "I believe so" to the question of whether or not he would refuse to return a verdict of guilty, if proved, just because the penalty may be death;[4] one said he "would have difficulty" in finding defendants guilty if the penalty may be death;[5] and one said he would automatically recommend mercy though he could join in a verdict of guilty.[6]
It thus appears that the jurors who were excused for cause all came within the permissible area mentioned in Witherspoon. The trial judge is shown to have exercised great care in limiting the exclusion for cause to those prospective jurors expressing unwillingness to find guilt if the penalty may be death or would automatically recommend mercy regardless of the circumstances. There were a number of instances in which other veniremen expressed a distaste for capital punishment and the prosecution exercised peremptory challenges to them.
We are not cited to nor are we aware of any infringement of rights which arise from the exercise by the state of peremptory challenges within its quota. Nothing is made to show that the selection of the personnel composing the jury in this case resulted in a panel which was in any sense organized either to convict or to decline to recommend mercy or was otherwise predisposed to any verdict. There were cogent reasons, arising from the evidence, to persuade them to render the verdicts which they returned.
The judgments are affirmed.
ROBERTS, DREW and CARLTON, JJ., and SPECTOR, District Judge, concur.
ERVIN, C.J., concurs in judgment.
BOYD, J., dissents.
NOTES
[1] This statute also defines murder in the second and third degrees and states the authorized punishments for these crimes.
[2] Lawrence; Ramsey; Rudderman; McNeal; Kiser; Herring; Ernest Mobley; Scarborough; Albert Mobley; Teston; McDonald; Nininger; Wilson; Vickory; Johnson.
[3] Laessle
[4] Nolan
[5] Weigman
[6] Roberts