245 So.2d 618 (1971)
STATE of Florida, Petitioner,
v.
John Edward MITCHELL, Respondent.
No. 39223.
Supreme Court of Florida.
March 3, 1971.
*619 Earl Faircloth, Atty. Gen., and Michael N. Kavouklis, Asst. Atty. Gen., for petitioner.
Joe P. Yanchuck, of Earle, Jones, Chambers & Carey, St. Petersburg, for respondent.
BOYD, Justice.
This cause is before us on petition for writ of certiorari to review the decision of the District Court of Appeal, Second District, reported at 227 So.2d 728. Jurisdiction is based on conflict between the decision sought to be reviewed and the decision of this Court in Wilson v. State[1] and the decision of the District Court of Appeal, Fourth District, in Gay v. City of Orlando.[2]
Mitchell, respondent herein, while speeding at 60 miles per hour in a 35 mile per hour zone, ran a red light and killed two people. Three persons, including two police officers, were eye witnesses to the accident. While Mitchell, who was "shaken up" and received cuts and bruises, was in the hospital, a laboratory technician, at the direction of a police officer, took a blood sample from Mitchell which was ultimately *620 introduced into evidence at Mitchell's trial for manslaughter.
A four-count information was filed charging two counts of manslaughter by culpable negligence in the driving of an automobile, one count for each victim, and two counts of manslaughter of the same two victims by driving while intoxicated. The jury found Mitchell not guilty on the two counts of manslaughter by intoxication and guilty on the two counts of manslaughter by culpable negligence.
On appeal, the District Court reversed the conviction on the grounds that the blood taken from Mitchell without his consent after the accident violated his constitutional guaranties against compulsory self-incrimination and unreasonable search and seizure so that the blood-taking evidence was inadmissible. The District Court stated that even though Mitchell was acquitted of the manslaughter-intoxication count, evidence of any inebriation on his part at the time of the accident assumed a "critical position of importance" in the case against him for manslaughter through culpable negligence. In its holding the District Court distinguished the decision of the United States Supreme Court in Schmerber v. California,[3] on the grounds that in that case the blood sample was taken from Schmerber while he was actually under arrest and in custody upon a valid criminal charge, whereas in the instant case Mitchell was neither under arrest nor under police detention at the time the blood sample was taken. In reaching its conclusion, the District Court also found that the evidence was privileged under Florida Statutes § 317.171, F.S.A., and stated its "disagreement" with the United States Supreme Court's decision in Schmerber and its rejection of its own prior decision in Giddens v. Cannon.[4]
The decision of the District Court creates clear and unavoidable conflict with the decision of this Court in Wilson v. State,[5] supra, wherein we held:
"The contention of defendants of deprival of constitutional rights in the taking of blood samples from them and in introducing into evidence the results of tests from such samples is fully answered adversely to them in Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908. In that case this precise question was raised and it was held that the imposition of a compulsory taking of a blood sample from an accused for tests and the use of results of such tests in evidence at his trial do not violate his constitutional rights to due process of law, his privilege against self-incrimination, his right to counsel, or his right against unreasonable searches and seizures."
There is also conflict with the decision of the District Court of Appeal, Fourth District, in Gay v. City of Orlando, supra, wherein it was held that the administration of a breathalizer tests occupies the same status as a blood test and does not violate defendant's privilege against self-incrimination. The District Court was apparently unaware of the Wilson and Gay decisions and these decisions are not mentioned in the decision below.
The decision sought to be reviewed marks a radical departure from both federal and state authorities on the subject. All of respondent's contentions, except the one relating to Florida Statutes § 317.171, F.S.A., were expressly considered and rejected by the United States Supreme Court in Schmerber v. California, supra. Decided in 1966, Schmerber remains the law of the land today. In Schmerber, the United States Supreme Court quoted from its earlier leading case, Holt v. United States, *621 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 (1910), as follows:[6]
"[T]he prohibition of compelling a man in a criminal court to be witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material. The objection in principle would forbid a jury to look at a prisoner and compare his features with a photograph in proof."
The Schmerber case goes on to recognize that:[7]
"[B]oth federal and state courts have usually held that it [privilege against self-incrimination] offers no protection against compulsion to submit to finger-printing, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture. The distinction which has emerged, often expressed in different ways, is that the privilege is a bar against compelling `communications' or `testimony,' but that compulsion which makes a suspect or accused the source of `real or physical evidence' does not violate it."
The United States Supreme Court in Schmerber also rejected the contention that taking of the blood sample constituted an unreasonable search and seizure and held that there was plainly probable cause for the officer to believe that Schmerber was under the influence of intoxicating liquor.
The facts in the Schmerber case are very similar to those in the case at bar. Schmerber, however, refused to submit voluntarily to the blood test on the advice of his counsel. The record in the instant case, on the other hand, does not indicate that Mitchell objected to the blood test in any way. The District Court states, however: "Mitchell did not consent to the blood taking, nor was he even asked." Under the decisions of the United States Supreme Court, consent is immaterial. In Breithaupt v. Abram,[8] the United States Supreme Court held that the taking of blood from an unconscious driver immediately after the accident did not violate due process of law, stating:[9]
"The test upheld here is not attacked on the ground of any basic deficiency or of injudicious application, but admittedly is a scientifically accurate method of detecting alcoholic content in the blood, thus furnishing an exact measure upon which to base a decision as to intoxication. Modern community living requires modern scientific methods of crime detection lest the public go unprotected. The increasing slaughter on our highways, most of which should be avoidable, now reaches the astounding figures only heard of on the battlefield. The States, through safety measures, modern scientific methods, and strict enforcement of traffic laws, are using all reasonable means to make automobile driving less dangerous.
"As against the right of an individual that his person be held inviolable, even against so slight an intrusion as is involved in applying a blood test of the kind to which millions of Americans submit as a matter of course nearly every day, must be set the interests of society in the scientific determination of intoxication, one of the great causes of the mortal hazards of the road. And the more so since the test likewise may establish innocence, thus affording protection against the treachery of judgment based on one or more of the senses. Furthermore, since our criminal law is to no small extent justified by the assumption of deterrence, *622 the individual's right to immunity from such invasion of the body as is involved in a properly safeguarded blood test is far outweighed by the value of its deterrent effect due to public realization that the issue of driving while under the influence of alcohol can often by this method be taken out of the confusion of conflicting contentions."
But the District Court in the instant case points out that Schmerber was under arrest at the time the blood sample was taken, whereas Mitchell was not. The question is not whether the driver has been formally placed under arrest at the time the blood sample was taken, but whether there was a "clear indication" of "relevance and likely success of a test of petitioner's blood for alcohol,"[10] and whether the requirements of Florida Statutes § 322.261, F.S.A., were met. The officers in the instant case had sufficient "clear indication" that a blood test was called for.
Florida Statutes § 322.261(1) (b), F.S.A., allows the taking of a blood test if the physical condition of one who was the driver in a motor vehicle accident is such as to render it "impractical" or "impossible" to administer a breath, urine or saliva test within the time period that such test can be administered.[11] Subsection (2) (b) provides that the blood test, unlike the breath, urine or saliva tests, can only be given by a physician, nurse or technologist acting at the request of a peace officer and that the blood can only be withdrawn at a hospital, clinic, or other medical facility.[12]
The blood test provided for in Florida Statutes § 322.261(1) (b), F.S.A., is intended to be used as a substitute for the breath, urine or saliva test in the event the condition of the driver of a vehicle involved in an accident is such as to render the other tests impractical or impossible to administer. The Legislature has also pointedly omitted any requirement of an arrest in connection with the administration of a blood test under subsection (1) (b). There are other safeguards applicable to this particular test. Further, the circumstances under which a blood test is allowed to be given render arrest prior to its administration difficult, and often impossible.
We are of the opinion that the Legislature foresaw the difficulty and inutility of attempting to arrest an unconscious person or one in shock or on the operating table of a hospital.[13] It should be pointed out that the blood test, as provided for use in *623 these particular situations, can exonerate the person tested. It will often be to the benefit of the unconscious or otherwise incapacitated person to be tested as soon after the accident as possible.
We hold, therefore, that it is unnecessary either under the Federal or Florida Constitutions or under Florida Statutes § 322.261 to place a person under arrest prior to administering a blood test as authorized under subsection (1) (b) of the Act.
Respondent Mitchell has never contended that the blood test was improperly administered to him because some other test could have been given. Mitchell was "considerably shaken up" and received cuts and bruises in the accident. He was apparently incapacitated to such an extent as to render the other tests impractical. The blood was extracted at the hospital by a laboratory technician as required by the Statute.
We turn now to the holding of the District Court that the evidence obtained as a result of the blood test in the instant case was also inadmissible because of Florida Statutes § 317.171, F.S.A., which provides:
"All accident reports made by persons involved in accidents shall be without prejudice to the individual so reporting and shall be for the confidential use of the department or other state agencies having use of the records for accident prevention purposes, * * *. No such report shall be used as evidence in any trial, civil or criminal, arising out of an accident, * * *."
The District Court has construed our decision in State v. Coffey,[14] as precluding, under Florida Statutes § 317.171, F.S.A., evidence of the results of a blood test given prior in time to the completion of an accident report. In Coffey, the facts are that the accident report was completed prior to the blood test being administered and the court found that the blood test was not taken by the investigating officer for the purpose of completing his accident report. In the Coffey case, we held that Florida Statutes § 317.171, F.S.A., applied only to such statements as the driver of the vehicle is compelled to make in order to comply with his statutory duty and being in derogation of common law should be strictly construed. We stated:[15]
"And we do not think that the Legislature intended Sec. 317.171, supra, to have the effect of shielding a person suspected of committing a crime in the operation of a motor vehicle from any investigation whatsoever. The fact that the crime was committed in the operation of a motor vehicle is pertinent to the highway safety program of this State; but it does not entitle the person suspected of or charged with committing such a crime to any special treatment insofar as the determination of his guilt or innocence is concerned. In our opinion, he is entitled to the same constitutional safeguards as any other person suspected of or charged with a crime  no more and no less."
The test for the statutory exclusion under Florida Statutes § 317.171, F.S.A., is whether the information sought to be excluded was taken by the investigating officer for the purpose of making his accident report and formed a basis for that report. The mere fact that the report is filed or completed subsequent in time to the taking of the blood alcohol test, does not justify an inference that the results of the test were taken for, or formed a basis for, the report. In the Coffey case, supra, this Court distinguished Cooper v. State,[16] a case holding blood test results inadmissible, on the grounds that the blood test in Cooper was taken by the investigating officer for the "declared purpose" of completing his accident report.
*624 Accordingly, the decision of the District Court is quashed and the cause remanded with directions to reinstate the judgment of the trial court.
It is so ordered.
ROBERTS, C.J., and ERVIN, ADKINS and DREW (Retired), JJ., concur.
NOTES
[1] 225 So.2d 321 (Fla. 1969).
[2] 202 So.2d 896 (Fla.App.4th 1967).
[3] 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).
[4] 193 So.2d 453 (Fla.App.2d 1967).
[5] 225 So.2d 321, 324 (Fla. 1969).
[6] Schmerber v. California, 384 U.S. 757, 763, 86 S.Ct. 1826, 1832, 16 L.Ed.2d 908 (1966).
[7] Id. at 764, 86 S.Ct. at 1832.
[8] 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448 (1957).
[9] Id. at 439, 77 S.Ct. at 412.
[10] Schmerber v. California, 384 U.S. 757, 769, 86 S.Ct. 1826, 1835, 16 L.Ed.2d 908 (1966).
[11] "Any such person who is incapable of refusal by reason of unconsciousness or other mental or physical condition shall be deemed not to have withdrawn his consent to any such test. Any such person whose consent is implied as hereinabove provided and who, during the period within which test prescribed herein can be reasonably administered, or who, being admitted to a hospital as a result of his involvement as a driver in a motor vehicle accident, is so incapacitated as to render impractical or impossible the administration of any of the aforesaid tests of breath, urine, or saliva, shall be deemed to have consented also to an approved blood test given as provided for herein, and shall be deemed not to have withdrawn his consent therefor. Under the foregoing circumstances of this subsection, such tests, inclusive of said blood test, may be administered whether or not such person is told that his failure to submit to such blood test will result in the suspension of his privilege to operate a motor vehicle upon the public highways of this state."
[12] "Only a physician, registered nurse, or duly licensed clinical laboratory technologist or clinical laboratory technician, acting at the request of a peace officer, may withdraw blood for the purpose of determining the alcoholic content therein. Such withdrawal of blood shall be performed only at a hospital, clinic, or other medical facility. This limitation shall not apply to the taking of breath, urine, or saliva specimens."
[13] F.S. § 901.16 and § 901.17, F.S.A., require officer making arrest to inform person arrested of his authority and the cause of the arrest.
[14] 212 So.2d 632 (Fla. 1968).
[15] Id. at 635.
[16] 183 So.2d 269 (Fla.App.1st 1966).