417 So.2d 755 (1982)
STATE of Florida, Appellant,
v.
Ronnie WILLIAMS, Appellee.
No. 81-1275.
District Court of Appeal of Florida, Fifth District.
July 21, 1982.
Rehearing Denied August 3, 1982.
*756 Jim Smith, Atty. Gen., Tallahassee, and Evelyn D. Golden, Asst. Atty. Gen., Daytona Beach, for appellant.
Gregory M. Wilson, of Taylor & Wilson, Orlando, for appellee.
SHARP, Judge.
The state appeals[1] the trial court's order, which suppressed the results of Williams' blood-alcohol level test, prior to the commencement of his trial for manslaughter by driving while intoxicated. We reverse.
A head-on collision between Williams in his pick-up truck and a woman in a small car resulted in her death. Williams had crossed the center line of State Road 15-A, and hit the small car in its lane. Trooper Harper who observed the scene of the accident shortly after it occurred, suspected Williams was intoxicated. His suspicions were based on observations of how the accident occurred. Harper also smelled alcohol on Williams' person, and noticed that Williams' eyes were unusually red. Harper told Williams he had begun a homicide investigation, and then read him a warning pursuant to the implied consent statute.[2]
Williams was not arrested at that time. It was the policy of the force Trooper Harper worked with not to arrest a suspect until a blood test had been taken. Harper asked Williams to take the blood test. Williams asked what would happen if he refused. Harper told him his driver's license would be suspended for three months. Williams then consented to the test because his job required him to drive. At the hospital he signed a written consent form. The blood test was administered at a hospital approximately three hours after the accident.
In determining whether or not the blood test evidence is admissible, like any other kind of evidence, if it is relevant (and this clearly is), the assumption should be that it is admissible unless barred by some privilege, constitutional right, statute, or rule. The only two possible bars in this case are the Fourth and Fifth Amendments of the United States Constitution, and section 322.261, Florida Statutes (1979).
The Florida Supreme Court held in State v. Mitchell, 245 So.2d 618 (Fla. 1971) that, based on Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), the Fifth Amendment does not bar the use of physical as opposed to testimonial evidence. It also held that the Fourth Amendment protection against unreasonable search and seizure did not bar the taking of blood for testing, where there was probable cause to believe the driver had been driving while intoxicated. Whether or not the driver had been arrested makes no difference for purposes of the Fourth Amendment if probable cause to arrest exists prior to the search.[3] In this case, the record shows such probable cause existed.
Other state courts have also reached the same conclusion.[4] The justification is that a search warrant is not needed where there is probable cause to arrest, and the evidence sought is likely to dissipate before a search warrant can be obtained  so called "exigent circumstances." Clearly, such circumstances exist in these cases because the blood test must be taken close in time to the accident, or the alcohol will be eliminated by physiological processes from the driver's body in a matter of hours.
The test when properly administered, produces highly probative and accurate evidence. Its use should be encouraged, *757 where constitutionally allowed, as a means to stop the carnage on the highways caused by drunk drivers. The Florida Supreme Court in Mitchell quoted with approval Breithaupt v. Abram, 352 U.S. 432, 439, 77 S.Ct. 408, 412, 1 L.Ed.2d 448 (1957) which is relevant to this case:
The test upheld here is not attacked on the ground of any basic deficiency or of injudicious application, but admittedly is a scientifically accurate method of detecting alcohol content in the blood, thus furnishing an exact measure upon which to base a decision as to intoxication. Modern community living requires modern scientific methods of crime detection lest the public go unprotected. The increasing slaughter on our highways, most of which should be avoidable, now reaches the astounding figures only heard of on the battlefield. The States, through safety measures, modern scientific methods, and strict enforcement of traffic laws, are using all reasonable means to make automobile driving less dangerous.
The more difficult issue in this case is whether Williams' blood test is barred by section 322.261, Florida Statutes (1979).[5] The court in Mitchell held that the blood test was admissible under section 322.261(1)(c) because the driver-defendant was sufficiently incapacitated to put him in the category of being "incapable of refusal by reason of unconsciousness, or other mental or physical condition."
In Sambrine v. State, 386 So.2d 546 (Fla. 1980) the court had to determine whether section 322.261 barred the blood test results of a driver who was conscious and who refused to take both the breath test and the blood test, and had the blood test taken over his active protest. The court said that section 322.261 goes beyond the protection of the Fourth and Fifth Amendments in requiring consent and allowing drivers the right to refuse to take tests.
*758 Section 322.261 is an unfortunate example of poor drafting.[6] Subsection (1)(a) covers the situation where a driver is lawfully arrested, and put to the choice of taking the chemical breath test, or losing his license for three months. If the driver is not arrested, the chemical breath test may be taken, with the driver's consent, but the results of the test are not admissible. Subsection (1)(b)2 requires an officer to advise a driver who has not been arrested he can refuse to take the chemical breath test, and obtain his written consent. Subsection (1)(c) is the first place "blood tests" are mentioned. It provides that in lieu of the chemical breath test, a blood test may be taken from an unconscious person, and no consent is required (it is "deemed" to have been given) and it is not necessary to tell the person that refusal will result in suspension of his driver's license. Obviously the person who drafted subsection (1)(c) assumed consent and warnings in subsection (1)(b)2 were required for blood tests as well as breath tests.
The court in Sambrine construed section 322.261 as requiring consent of a conscious person to take a blood test, and allowing the imposition of sanctions (suspension of a driver's license) if the person refuses.
This court is not free to ignore plain statutory language and obvious legislative intent. Any careful reading of section 322.261 leads to the inescapable conclusion that a person is given the right to refuse testing. If this were not so, it is unclear why the legislature provided for a definite sanction and a detailed procedure for the enforcement of such sanction. Not once but twice the implied consent law provides for a three month suspension in the case of refusal.
386 So.2d at 548. In Sambrine, the driver refused to take the blood test. Hence, it was not admissible against him in his criminal trial.
In this case, the trooper Harper told Williams, as the Florida Supreme Court said he must in Sambrine, that he could refuse the blood test, and if he did, his license would be suspended. But unlike Sambrine, in this case Williams consented to take the test. Thus, it was admissible.
The question then arises whether subsection (1)(a) of section 322.261 applies to this case, because chemical breath tests are barred from being admissible in court if not taken in connection with a lawful arrest for driving while intoxicated. Sambrine does not discuss this point, and we decline to rewrite section 322.261 by inserting "blood test" every time "chemical breath test" appears. The rewritten statute effective July 1982 continues to treat blood tests differently than chemical breath tests for many purposes, one of which is not requiring an arrest for blood tests, but continuing to require it for breath tests, if the test is later to be admissible. See Ch. 82-155, §§ 3, 4, 5, Laws of Florida. This is indicative of prior legislative intent regarding section 322.261. See Watson v. Holland, 155 Fla. 342, 20 So.2d 388 (1944); Amos v. Conkling, 99 Fla. 206, 126 So. 283 (1930); Foremost Insurance Company v. Medders, 399 So.2d 128 (Fla. 5th DCA 1981); Stafford v. State, 380 So.2d 538 (Fla. 5th DCA 1980).
For the reasons stated in this opinion, the order appealed is
REVERSED.
ORFINGER, C.J., and COWART, J., concur.
NOTES
[1] Fla.R.App. 9.140(c)(1)(B).
[2] § 322.261, Fla. Stat. (1979).
[3] State v. Edge, 397 So.2d 939 (5th DCA), review denied, 407 So.2d 1103 (Fla. 1981).
[4] State v. Oevering, 268 N.W.2d 68 (Minn. 1978); State v. Heintz, 286 Or. 239, 594 P.2d 385 (1979); Van Order v. State, 600 P.2d 1056 (Wyo. 1979).
[5] The relevant portions of the statute provide:

(1)(a) Any person who shall accept the privilege extended by the laws of this state of operating a motor vehicle within this state shall by so operating such vehicle be deemed to have given his consent to submit to an approved chemical test of his breath for the purpose of determining the alcoholic content of his blood if he is lawfully arrested for any offense allegedly committed while the person was driving a motor vehicle under the influence of alcoholic beverages. The test shall be incidental to a lawful arrest and administered at the request of a peace officer having reasonable cause to believe such person was driving a motor vehicle within this state while under the influence of alcoholic beverages. Such person shall be told that his failure to submit to such a chemical test will result in the suspension of his privilege to operate a motor vehicle for a period of 3 months.
(1)(b)1. Notwithstanding the provisions of this section, a law enforcement officer who has reason to believe that a person's ability to operate a motor vehicle is impaired by alcohol and that the person has been operating a motor vehicle during the period of such impairment may, with the person's consent, give, or the person may demand, a pre-arrest breath test for the purpose of determining if said person is in violation of section 316.193(1), but the taking of such pre-arrest breath test shall not be deemed a compliance with the provisions of paragraph (a). The results of any test administered under this section shall not be admissible into evidence in any civil or criminal proceeding... .
(1)(b)2. Prior to administering any pre-arrest breath test, a law enforcement officer shall advise the motor vehicle operator that he has the right to refuse to take such test, and, prior to administering such test, a law enforcement officer shall obtain the written consent of the motor vehicle operator.
(1)(c) Any such person who is incapable of refusal by reason of unconsciousness or other mental or physical condition shall be deemed not to have withdrawn his consent to such test. Any such person whose consent is implied as hereinabove provided, and who, during the period within which a test prescribed herein can be reasonably administered, or who, being admitted to a hospital as a result of his involvement as a driver in a motor vehicle accident, is so incapacitated as to render impractical or impossible the administration of the aforesaid test of his breath shall be deemed to have consented also to an approved blood test given as provided for herein and shall be deemed not to have withdrawn his consent therefor. Under the foregoing circumstances, a blood test may be administered whether or not such person is told that his failure to submit to such blood test will result in the suspension of his privilege to operate a motor vehicle upon the public highways of this state. (Emphasis added).
* * * * * *
[6] The more lengthy revised statute which goes into effect July 1, 1982 fails to remedy all of the defects of section 322.261, but at least under the circumstances of this case, a new "get tough" section provides that a driver such as Williams who has been involved in an accident which results in the death or serious injury of another human being has no right to refuse the blood test. It can be taken by force, and the results, plus the driver's resistance, may be used as evidence against him in a criminal or civil case. Ch. 82-155 §§ 4, 5, Laws of Fla. Clearly, this statute no longer will give greater protection than the Fourth Amendment.