473 So.2d 778 (1985)
Edward COX, Appellant,
v.
STATE of Florida, Appellee.
No. 84-1060.
District Court of Appeal of Florida, Second District.
August 7, 1985.
*780 Joseph F. McDermott, St. Petersburg, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and William E. Taylor, Asst. Atty. Gen., Tampa, for appellee.
OTT, Judge.
Appellant was convicted by a jury of DWI/manslaughter, in violation of section 316.1931(2), Florida Statutes (1983). On appeal, he attacks the denial of his motion to suppress tangible evidence, i.e., blood samples and blood alcohol test results. He also claims the trial court erred in admitting certain hearsay statements. For the reasons stated below, we affirm.
Appellant was charged with DWI/manslaughter following the death of a passenger in a car with which appellant's car collided. There is no real issue that appellant was operating one of the vehicles and that there was a death or serious bodily injury caused by the collision.
The accident occurred at approximately 5:42 p.m. on February 24, 1983. The investigating officer first requested the blood sample at the hospital at approximately 6:30 p.m., after the accident scene investigation had been completed. The blood sample was actually drawn at approximately 6:50 p.m., and read .215 (high).
On the morning that trial began, appellant filed a motion to suppress the blood samples and the blood alcohol test results based upon: (1) lack of probable cause to believe appellant was under the influence of intoxicants to require a blood test; (2) blood sample removed by illegal search and seizure; and (3) unconstitutionality of section 316.1933, Florida Statutes (1983), insofar as it permits a search and seizure (the taking of a blood sample) not incident to arrest. On appeal, appellant contends that the trial court erred in denying the motion.
Section 316.1933(1) provides:
Notwithstanding any recognized ability to refuse to submit to the tests provided in s. 316.1932 or any recognized power to revoke the implied consent to such tests, if a law enforcement officer has probable cause to believe that a motor vehicle driven by or in the actual physical control of a person under the influence of alcoholic beverages or controlled substances has caused the death or serious bodily injury of a human being, such person shall submit, upon the request of a law enforcement officer, to a test of his blood for the purpose of determining the alcoholic content thereof or the presence of chemical substances as set forth in s. 877.111 or controlled substances therein. The law enforcement officer may use reasonable force if necessary to require such person to submit to the administration of the blood test. The blood test shall be performed in a reasonable manner. The term "serious bodily injury" means a physical condition which creates a substantial risk of death; serious, personal disfigurement; or protracted loss or impairment of the function of any bodily member or organ.
In enacting section 316.1933, the Legislature has clearly differentiated between the rights of motor vehicle operators with respect to tests for impairment or intoxication under sections 316.1932 and 316.1933, depending upon whether the operator has "caused the death or serious bodily injury of a human being." Some of the differences are specifically delineated in the statutes; others are implicit.
As we read section 316.1933, where there is probable cause to suspect intoxication, consent and withdrawal of implied consent to the extraction of a blood sample are not options available to the operator of a motor vehicle who has caused death or "serious bodily injury," as therein defined. Under such circumstances, there is a clear and unqualified statutory mandate to comply with a law enforcement officer's request for a blood sample. Assuming the two prerequisites of (1) probable cause to suspect intoxicant impairment, and (2) *781 death or serious bodily injury, the only restrictions or limitations are: (1) the officer is confined to the use of "reasonable force"  if force is necessary at all; and (2) the statutory qualifications and methods employed by the person performing the extraction. See § 316.1933(2), Fla. Stat. (1983).
By the same token, there is no requirement to advise the operator of the consequences of refusal to submit to the blood test. Additionally, there is no requirement that the request of the officer follow lawful arrest. These limitations of section 319.1932 do not apply when there has been an accident involving a death or serious bodily injury. It is interesting to note, however, that the blood test authorized under section 316.1932(1)(c) does not have to follow lawful arrest, as do the breath and urine tests provided for in section 316.1932(1)(a).
With the above in mind, we now address appellant's arguments on whether the trial court erred in denying his motion to suppress.
As to probable cause, suffice it to say the trial judge had ample detailed testimony from the investigating officer, hospital emergency room doctor, clerk, and technician to support the officer's conclusion that appellant could be intoxicated or under the influence of intoxicants at the time of the accident and caused the death or serious bodily injury of a human being. § 316.1933(1), Fla. Stat. (1983); Jackson v. State, 456 So.2d 916 (Fla. 1st DCA 1984). The trial judge resolved the conflicts against the appellant, and his determination is not reviewable here except in the absence of any substantial, competent evidence. State v. Stephens, 441 So.2d 171 (Fla. 3d DCA 1983).
Next, appellant urges the extraction was illegal, primarily on two grounds: use of unreasonable force (the statute authorizes use of reasonable force) and failure to accord appellant the right to have his attorney present.
The claim that unreasonable force was used is predicated solely upon a statement the officer made to appellant indicating that he would get a blood sample if he had to hit appellant over the head to get it. The officer testified that he made the statement after repeated refusals of appellant to consent, that he never made any move nor had any intention to carry it out, that it was an effort by words to scare appellant or induce fear and secure submission without the use of any force, that appellant was not intimidated in the least by the statement and continued to adamantly refuse, but thereafter appellant's wife persuaded him to cooperate fully. Hospital personnel and appellant's wife were present in the emergency room the entire time. No one else in the emergency room remembered the threat or saw the officer offer any physical intimidation or force. There was no evidence whatsoever that the threat, if any, caused appellant to consent to cooperate. While we are not to be understood as holding that these words could never, under any circumstances, constitute the use of "unreasonable force," we cannot say that the trial court erred in concluding that unreasonable force was not used here.
Appellant also claims that he was denied his right to counsel at the taking of the blood test. As far as the record reveals, appellant demanded counsel when he first refused to allow a blood sample to be taken. The officer did not assist appellant with contacting his attorney, but appellant managed to telephone his attorney. The attorney apparently arrived after the blood sample had been drawn. While it may be true that the officer did not honor appellant's request for counsel, our supreme court has held that the taking of a blood test does not require counsel being present. See Wilson v. State, 225 So.2d 321, 324 (Fla. 1969) (no right to counsel for compulsory blood test to determine blood type), rev'd on other grounds, 403 U.S. 947, 91 S.Ct. 2286, 29 L.Ed.2d 858 (1971). In Wilson, our supreme court relied upon Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), which expressly held that there was no right to *782 counsel at the taking of a blood sample to determine blood-alcohol content. Id. at 766, 86 S.Ct. at 1833. We would also note that, under section 316.1933 and the facts of this case, there was no issue on which counsel could have advised appellant because a blood test is required upon a showing of probable cause, which was shown here.
Appellant further challenges the denial of his motion to suppress on the basis that section 316.1933 is unconstitutional insofar as it purports to permit a search and seizure (blood sample) not incident to lawful arrest. We had supposed it well settled in Florida that it is unnecessary to place a motor vehicle operator under arrest prior to administering a blood test where there is probable cause to arrest the driver for driving under the influence. Filmon v. State, 336 So.2d 586 (Fla. 1976); State v. Mitchell, 245 So.2d 618 (Fla. 1971). As discussed earlier, probable cause existed here; therefore, it was unnecessary to place appellant under arrest before administering the blood test.
Appellant urges that Filmon and Mitchell were based upon an incorrect reading of Schmerber v. California. After reviewing Schmerber, Filmon, and Mitchell, we cannot say that our supreme court's interpretation of Schmerber is incorrect. We find support for these holdings from decisions of other state courts which, relying on Schmerber and its progeny, have reached the same conclusion as Filmon and Mitchell. See, e.g., People v. Sutherland, 683 P.2d 1192 (Colo. 1984); State v. Oevering, 268 N.W.2d 68 (Minn. 1978) (relying on Cupp. v. Murphy, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973)). See also State v. Williams, 417 So.2d 755, 756 n. 4 (Fla. 5th DCA 1982). Thus, appellant has presented us with no reason to declare the statute unconstitutional, or to reverse the denial of his motion to suppress.
Finally, appellant argues that the trial court erred in admitting certain hearsay statements over his timely objections. Appellant's wife's statements to the officer at the Cox home and en route to the hospital fall within the excited utterances exception to the hearsay rule under section 90.803(2), Florida Statutes (1983). The statements were made immediately upon being notified of her husband's accident, "an occurrence startling enough to produce nervous excitement and render the utterances spontaneous and unreflecting." Lyles v. State, 412 So.2d 458, 460 (Fla. 2d DCA 1982).
The hospital clerk's testimony regarding a telephone conversation with a Mrs. Cox should have been excluded as inadmissible hearsay. See § 90.801(1)(c), Fla. Stat. (1983). Nevertheless, the admission of this hearsay testimony was harmless error given the overwhelming evidence of appellant's guilt. See § 924.33, Fla. Stat. (1983); Pickrell v. State, 301 So.2d 473 (Fla. 2d DCA 1974). The investigating officer and others testified that appellant smelled of alcohol; appellant's blood-alcohol content was high; and appellant was the driver of a vehicle which caused a death. See § 316.1931(2), Fla. Stat. (1983).
Accordingly, appellant's conviction and the denial of his motion to suppress evidence are AFFIRMED.
SCHEB, A.C.J., and DANAHY, J., concur.