875 So.2d 815 (2004)
STATE of Florida, Appellant/Cross-Appellee,
v.
Regina SERRAGO, Appellee/Cross-Appellant.
No. 2D03-776.
District Court of Appeal of Florida, Second District.
July 2, 2004.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Erica M. Raffel and Helene S. Parnes, Assistant Attorneys General, Tampa, for Appellant/Cross-Appellee.
James Marion Moorman, Public Defender, and Richard P. Albertine, Jr., Assistant Public Defender, Bartow, for Appellee/Cross-Appellant.
DAVIS, Judge.
Regina Serrago was charged with numerous offenses arising out of a fatal traffic accident. During the course of the traffic accident investigation, both blood *816 and urine tests were conducted on Serrago, who moved to suppress the results of the tests. In this appeal, the State challenges the trial court's order suppressing Serrago's blood test results, and on cross-appeal, Serrago challenges the trial court's denial of her motion to suppress the results of her urine test. We reverse on both claims.
The traffic accident that resulted in these proceedings involved four vehicles on Interstate 275 in Pinellas County. Witnesses observed Serrago driving erratically at speeds approximating eighty-five miles per hour and weaving in and out of traffic, into the median, through the shrubbery barrier, and out the other side into oncoming traffic. She then went airborne for about fifty feet and collided head-on with one vehicle. The front seat passenger of that vehicle was ejected, resulting in fatal injuries. Two additional vehicles were forced to take emergency evasive measures in an attempt to avoid the accident, resulting in serious bodily injury to four other people.
Serrago was transported to the hospital, as were the other individuals who were injured. About one and one-half hours after the accident, Florida Highway Patrol Trooper Burke began inspecting all of the vehicles at the scene. He detected a slight odor of alcohol emanating from the driver's side of the passenger compartment of Serrago's vehicle. Armed with this knowledge and knowing also that the crash involved serious bodily injury and possibly a death, Trooper Burke ordered a blood draw on Serrago. At trial, he testified that his request was based on the following: (1) his detection of a slight odor of alcohol in the driver's side of the passenger compartment of Serrago's vehicle, (2) Trooper Frurick's statement to him that Serrago was combative at the hospital, (3) Trooper Hollis' statement to him that Serrago had been unconscious at the scene, and (4) Serrago's extremely erratic driving. When the initial blood draw yielded a blood alcohol level ("BAL") of only .009, Trooper Burke ordered a second blood test and a urine test, which revealed the presence of illegal drugs, primarily cocaine.
Serrago moved to suppress the results of the blood and urine tests. Following a hearing, the trial court suppressed only the results of the blood test. Applying what it believed to be the correct statute, section 316.1932(1)(c), Florida Statutes (2000), the trial court found that although Trooper Burke had probable cause to order a blood draw, because a urine test had not been impractical or impossible, the requirements for ordering a blood draw had not been met. The court also found that the blood draw was not authorized by section 316.1933(1) because that statute did not apply to the instant facts. Finally, the court denied Serrago's motion to suppress the results of the urine test because the court determined that the urine test met the requirements of what it deemed to be the applicable statute, section 316.1932(1)(c).
Although the trial court was convinced, as was the State, that section 316.1932(1)(c) was the correct statute to be applied in determining the validity of the blood draw, we disagree. We believe that the factual circumstances here require the application of section 316.1933. The statute that was incorrectly applied by the trial court, section 316.1932(1)(c), provides, in pertinent part:
Any person who accepts the privilege extended by the laws of this state of operating a motor vehicle within this state is, by operating such vehicle, deemed to have given his or her consent to submit to an approved blood test for the purpose of determining the alcoholic content of the blood or a blood test for *817 the purpose of determining the presence of chemical substances or controlled substances as provided in this section if there is reasonable cause to believe the person was driving or in actual physical control of a motor vehicle while under the influence of alcoholic beverages or chemical or controlled substances and the person appears for treatment at a hospital, clinic, or other medical facility and the administration of a breath or urine test is impractical or impossible.... Any person who is incapable of refusal by reason of unconsciousness or other mental or physical condition is deemed not to have withdrawn his or her consent to such test.
(Emphasis added.)
The statute that the court should have applied, section 316.1933(1), provides:
Notwithstanding any recognized ability to refuse to submit to the tests provided in s. 316.1932 or any recognized power to revoke the implied consent to such tests, if a law enforcement officer has probable cause to believe that a motor vehicle driven by or in the actual physical control of a person under the influence of alcoholic beverages, any chemical substances, or any controlled substances has caused the death or serious bodily injury of a human being, such person shall submit, upon the request of a law enforcement officer, to a test of the person's blood for the purpose of determining the alcoholic content thereof or the presence of chemical substances as set forth in s. 877.111 or any substance controlled under chapter 893. The law enforcement officer may use reasonable force if necessary to require such person to submit to the administration of the blood test. The blood test shall be performed in a reasonable manner. The term "serious bodily injury" means an injury to any person, including the driver, which consists of a physical condition that creates a substantial risk of death, serious personal disfigurement, or protracted loss or impairment of the function of any bodily member or organ.
(Emphasis added.)
The trial court specifically found that section 316.1932(1)(c) applied here because "[i]t is the statute envisioned for use when a driver suspected of driving under the influence of alcohol or chemical or controlled substances has appeared for medical treatment." While it is true that section 316.1932(1)(c) applies in such cases, the instant case presents the additional fact that the officer had probable cause to believe that the driver, while under the influence of alcohol or drugs, caused death or serious bodily injury to another. This placed the case squarely within the intended purview of section 316.1933(1).
The trial court offered two reasons that section 316.1933(1) did not apply to the instant case. First, the trial court cited State v. Kliphouse, 771 So.2d 16 (Fla. 4th DCA 2000). However, Kliphouse is distinguishable on its facts. The court in Kliphouse concluded that section 316.1933(1) did not apply there because the statute requires that before a blood draw may be authorized, law enforcement must reasonably believe that the defendant caused the injuries. Because the officer there did not believe that Kliphouse had caused the injuries, one of the statutory criteria had not been met.
The contrary is true here. The trial court specifically found that the trooper had reasonable cause to believe that Serrago was driving while under the influence of alcohol or drugs. We believe that, in view of Serrago's erratic driving and Trooper Burke's belief that he detected a slight odor of alcohol on the driver's side of the passenger compartment of her car, the trial court was correct. In addition, the *818 record not only supports the trial court's conclusion that the trooper had the requisite reasonable cause under section 316.1932(1)(c) to believe that Serrago was driving under the influence of alcohol or drugs, but also supports the conclusion that he had the probable cause required by section 316.1933(1) to believe that while driving in such a condition, she caused the death or serious bodily injury of a human being. Therefore, Kliphouse did not support the trial court's conclusion that section 316.1933(1) did not apply to the instant case.
Second, the trial court stated that section 316.1933(1) did not apply because that section anticipated a conscious driver and required that a law enforcement officer request the blood draw of the driver, neither of which occurred here. However, nothing in section 316.1933(1) refers to the driver's consciousness. Furthermore, it appears that the statutory reference in section 316.1933(1) to the officer's "request" that the driver submit to a test misled the trial court to conclude that the request must be made of the driver, who may then refuse the test. The remainder of the statute's language belies that assumption. The statute specifically provides that where, as here, the officer has the required probable cause, the defendant "shall submit" to a blood test. The statute also refers to the officer's ability to use reasonable force to require the person to submit to a blood test. See Cox v. State, 473 So.2d 778 (Fla. 2d DCA 1985) (stating that officer's threat to hit defendant over head to obtain blood sample was not unreasonable force). As this court stated in Cox, "[a]s we read section 316.1933, where there is probable cause to suspect intoxication, consent and withdrawal of implied consent to the extraction of a blood sample are not options...." Id. at 780. In view of these provisions, we conclude that the statutorily-required request is not a request for the consent of the person to be tested; it is a request that the test be performed. See State v. Webb, 753 So.2d 145 (Fla. 3d DCA 2000). In the context of this statute, the officer's request is the proverbial "offer that one cannot refuse."
Having found no merit in the two reasons offered by the trial court for not applying section 316.1933, and finding that the trial court improperly applied section 316.1932, we conclude that the trial court erred in requiring the State to show that a breath or urine test was impractical or impossible before allowing admission of the blood test. We therefore conclude that section 316.1933 applies, that the requirements of section 316.1933 have been met, and that the results of the blood test should have been admitted. We accordingly reverse the trial court's exclusion of the blood tests.
Turning to the question of the admissibility of the urine tests, the trial court concluded that section 316.1932(1)(c) authorized these tests. The trial court found that although this section specifically refers to blood draws, not urine tests, it impliedly allowed breath or urine tests if the same statutory requirements were met. We give de novo review to issues of statutory interpretation, BellSouth Telecorms., Inc. v. Meeks, 863 So.2d 287 (Fla. 2003), and we cannot agree with the trial court's interpretation here.
Our reading of section 316.1932(1)(c) leads us to conclude that it cannot reasonably be read to allow a urine test because it simply does not provide for same. Section 316.1932 contains two very distinct provisions that authorize the testing of blood, breath, and urine in order to detect the presence of alcohol or controlled substances. Section 316.1932(1)(a) allows for breath and urine testing but does so only pursuant to a lawful arrest. Section *819 316.1932(1)(c) authorizes blood draws but only under the following circumstances: (1) where there is reasonable cause to believe the person was driving a vehicle while under the influence of alcohol, chemicals, or controlled substances; (2) where the person appears for treatment at a medical facility; and (3) where the administration of a breath or urine test is impractical or impossible.
The only reason that section 316.1932(1)(c) mentions breath or urine tests is to limit blood draws to those situations in which a breath or urine test, impliedly authorized pursuant to section 316.1932(1)(a), was impossible or impractical. It does not specifically authorize any breath or urine tests, nor is its language susceptible of an interpretation that impliedly authorizes breath or urine tests. Rather, section 316.1932 clearly distinguishes between breath and urine tests, which are authorized by section 316.1932(1)(a), from blood tests, which are authorized by section 316.1932(1)(c). We conclude, therefore, that the trial court erred in concluding that section 316.1932(1)(c) impliedly authorized the urine test performed here.
This analysis is supported by case law, which has historically treated blood tests differently than breath and urine tests. In State v. Williams, 417 So.2d 755 (Fla. 5th DCA 1982), the Fifth District, in considering a breath test that was taken from an individual who was not under arrest, found that the legislative intent to treat blood tests differently from breath and urine tests was revealed in the legislature's failure to change the law as it relates to breath and urine when it changed the law regarding blood tests. Id. at 758. In State v. Hilton, 498 So.2d 698, 700 n. 4 (Fla. 5th DCA 1986), the court observed: "We note that, unlike breath or urine tests, a blood test administered pursuant to section 316.1932(1)(c) need not be incidental to a lawful arrest." In addition, Department of Highway Safety & Motor Vehicles v. Whitley, 846 So.2d 1163, 1167 (Fla. 5th DCA 2003), quoted with approval from State v. Barrett, 508 So.2d 361, 362 (Fla. 5th DCA), review denied, 511 So.2d 299 (Fla.1987), as follows: "`[T]he legislature has specifically declared that breath tests must be incident to a lawful arrest, and has made pre-arrest breath tests inadmissible.' "The court noted that since Barrett, the legislature had not substantially amended the statute, indicating its intent that prearrest breath tests should remain inadmissible.
Given our interpretation of section 316.1932, which clearly places breath and urine tests in a category that is separate from blood tests, we conclude that the trial court erred when it applied the blood test requirements portion of section 316.1932(1)(c) to Serrago's urine test in order to find that it was admissible. Because section 316.1932(1)(a) clearly requires that urine tests must be conducted pursuant to a lawful arrest, and because Serrago was not under arrest at the time that the urine test was taken, the urine test here was not admissible.
Having concluded that the trial court erred in suppressing Serrago's blood tests and in refusing to suppress Serrago's urine tests, we reverse and remand for further proceedings consistent with this opinion.
Reversed and remanded.
FULMER and SILBERMAN, JJ., concur.